STATE of Missouri, Respondent,

v.

Earl BOYKINS, Appellant.

No. 51570.

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Carl R. Gaertner, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Richard S. Bull, St. Louis, for appellant.

HOUSER, Commissioner.

The first question is whether this conviction of robbery in the first degree should be invalidated under the rule of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, 93 A.L.R.2d 733 and United States ex rel. Russo v. New Jersey, 3 Cir., 351

F.2d 429. After his arrest appellant was interrogated by police officers. He orally confessed to them that he participated in the holdup of Hy Feigenbaum's Market at 3501 Cass Avenue in the City of St. Louis on March 25, 1964. The police officers testified to the statements he made. Appellant claims violation of his right to obtain and consult with counsel prior to his confession, under the Sixth and Fourteenth Amendments to the Constitution of the United States.

Acting on information that Earl Boykins and John Hall had been involved in the holdup, two officers went to the West End Hotel, where Boykins and Hall lived. They were found in the saloon or lounge, seated in a booth with two females, Mattie Moore and Tommy Gunn. The officers stated to the men that they wanted to talk to them and requested them to step outside. Acting on the belief that the two men had something to do with the holdup in question the officers arrested them. They were arrested outside the hotel and placed in a police car. Ten minutes later the officers re-entered the hotel and arrested the two females. This occurred about 3:30 p. m. on March 30, 1964. All four were taken to the police station and booked. On the way to the police station the four were asked who their associates were. All four suspects were interrogated. At times they were questioned individually, at times collectively. Different officers interrogated them at different times. At the outset Earl Boykins was very briefly interrogated about the robbery. At first he positively denied any knowledge of or participation in any robberies or holdups whatever. Tommy Gunn confessed first. She said, among other things, that Earl Boykins' gun was at the hotel. She led officers to a .32 calibre S. & S. automatic revolver at the hotel. Earl Boykins had "passed" the revolver to Mattie Moore when the officers entered the hotel bar. After the officers and the two men stepped outside the hotel Mattie Moore "got rid" of the gun by wrapping it in some carpeting and leaving it on a table on the landing adjacent to the women's lavatory at the hotel. The revolver, together with seven shells and a cartridge clip, was recovered at 6:30 or 7:30 p. m. on March 30, 1964. The owner of the market at 3501 Cass, Hyman Feigenbaum, the victim of the robbery, was brought to the police station. He identified the revolver as the one he kept at the market and as the revolver taken from the market during the holdup. Hall then confessed. Finally, confronted with the gun, and having been told by the other three that they had confessed, Earl Boykins made his statement, detailing the facts which showed all four guilty of armed robbery on the occasion in question. His confession was made at 7:30 or 8 p. m. on March 30, 1964. After Boykins confessed to the officers the assistant circuit attorney appeared and took a further statement from him. After the initial denial by Earl Boykins and before he gave his first incriminating statement the officers advised him of his rights. An assistant circuit attorney also advised him "at great length" of his rights to obtain counsel and consult with a friend or say nothing if he chose. He was told that he did not have to make any statement if he didn't want to "and several other things were mentioned to him along the same lines." He was "fully advised of all of his constitutional rights." The officers testified that no threats, force or promises were used in obtaining the statement from Earl Boykins.

Appellant contends that he was interrogated at a time when the investigation was no longer "a general inquiry into an unsolved crime but had begun to focus on a particular suspect," namely, this appellant, as shown by the fact that he had been arrested for the very purpose of investigation of his connection with the crime; that there were *two* interrogations: the first by police officers, the second by the assistant circuit attorney—that while he was informed of his right to obtain counsel before the second interrogation he was not informed of his rights prior to the start of his first interrogation. Appellant

cites *Gideon* and *Escobedo* and quotes from *Russo*, and objects that the testimony showing that he was informed of his rights consisted of bare conclusions; that there was no specific testimony reciting what was actually said to appellant.

Appellant's rights were not violated but on the contrary were fully protected. Under the uncontradicted evidence Boykins was advised of his constitutional rights before he gave the incriminating statements. He was told that he had a right to obtain counsel, consult with a friend or remain silent and say nothing, if he so chose. Notwithstanding he was given this advice before he said anything implicating himself he talked and confessed without consulting friend or attorney. His incriminating statements were not made as a result of threats, force or promises. There is not the slightest intimation of physical or mental coercion.

■ We are of the opinion that in post-arrest proceedings, although the inquiry has focused upon a particular individual, incriminating statements made by him to the police may be used at the trial of charges later filed against him, where before he incriminates himself he is fully informed of his constitutional rights, of his right to counsel and to consult with a friend or to remain silent, and where no mental or physical coercion is employed.

*Escobedo, Gideon* and *Russo* are not in point. *Escobedo* had a lawyer whom he had employed before he was questioned. When arrested and interrogated he asked to be allowed to consult with his counsel. The lawyer, standing by at the place of the questioning, requested leave to consult with his client. Both requests were denied. Escobedo was *not* advised of his right to remain silent. During the interrogation he was handcuffed, required to stand, and he was nervous, upset, and agitated. He had not slept for over a week. Escobedo was coerced. Escobedo presents an aggravated situation altogether different from that of Boykins. Under the facts in *Gideon* the

defendant was held entitled to the assistance of defense counsel *at the trial*. That question does not arise in Boykins' case. This record shows that Cletus E. Rudolph, Esq. of the St. Louis bar appeared for Boykins, was present at all stages throughout his trial and assisted him in the post-trial proceedings. *Russo* held that defendants without counsel and who were not informed of their right to counsel or of their right to remain silent at the post-arrest interrogation stage were entitled to have their state convictions vacated, in the absence of an effective waiver of their rights, and that failure to request counsel does not constitute a waiver of the right to counsel. The distinguishing difference between the facts in the Russo and Boykins cases is at once apparent.

While the testimony as to the mode and manner in which Boykins was advised of his constitutional rights is cryptic and condensed, the essential requirements clearly appear to have been met.

■ We reject the contention that because there were two interrogations and he was not advised of his rights before the first of the interrogations it was error to use Boykins' statements. The first interrogation was casual, very brief and general. Boykins responded to the initial interrogation by denying any knowledge of any robberies. He made no incriminating statement whatever; gave nothing away as a result of the initial questioning. Before the second phase of the interrogation, which was specific and to the point, Boykins was advised of his constitutional rights. Under the facts in this case the jury was properly allowed to hear and take into consideration appellant's incriminating statements.

The next question is whether the court erred in refusing to grant the oral requests of defendant and his attorney before the jury was sworn, for a delay or continuance of the trial. Appellant claims lack of advance notice of the trial setting, lack of time for preparation for trial, and lack of

opportunity to file the written application for a continuance supported by affidavit, as provided for by Criminal Rule 25.08 and §§ 545.710, 545.720.

Appellant was indicted on April 21, 1964 and a substitute information in lieu of indictment was filed on November 13, 1964. On January 4, 1965 the case was assigned to a division of the circuit court, and on January 7 the case was continued. On February 5 the court appointed Cletus E. Rudolph as attorney for appellant and the case was ordered set for trial March 22. In the meantime appellant was ordered sent to a hospital for psychiatric examination. The case was continued to May 10 and again continued to June 1. In the published docket of criminal causes in circuit court the May 29 issue of St. Louis Daily Record listed the case for trial on June 1, at which date the case was assigned to Division 11 and called for trial. Counsel for defendant not being present, he was called by telephone at 9:20 a. m. and appeared in court 30 minutes later. The jury panel was then in the courtroom. Counsel had been unaware of the June 1 setting. He had received no actual notice of the trial date from the clerk's office. Because he has no criminal practice his secretary does not check the minutes, proceedings and settings of criminal cases in the Daily Record. Counsel's law office was closed on Saturday, May 29. Sunday, May 30, was Memorial Day, which was observed on Monday, May 31. He informed the court that he was not ready to go to trial on June 1 and orally requested a continuance, which was refused. Appellant and counsel conferred, and then for the first time appellant informed counsel of the existence of witnesses by whom he indicated he could establish the defense of alibi. As trial proceedings commenced but before the jury was sworn Mr. Rudolph again orally requested a continuance, stating that defendant had no prior knowledge of the setting until that morning, June 1; that defendant could have two witnesses present at his trial who would testify to facts and cir-

cumstances tending to prove that defendant was not present and did not engage in the alleged offense with which he was charged—witnesses who would testify that he was in Mississippi at the time the crime was committed. No other information was offered, such as the names and addresses of the witnesses, their availability, etc. The court denied the request and the case went to trial.

■ Criminal Rule 25.08 governs the matter of the granting of continuances in criminal cases. It contemplates a written application showing good cause for a continuance. If based on the absence of a witness it must give the name of the witness, show where he resides or may be, the probability of procuring his testimony and within what time, what facts the applicant believes the witness will prove, that he believes them to be true, that he is unable to prove these facts by any other witness whose testimony can be as readily procured, that the witness is not absent by the connivance, procurement or consent of the applicant, what diligence has been used in the premises by the applicant, and that the application is not made for vexation or delay merely but to obtain substantial justice on the trial of the cause. A defendant's application must be supported by oath or affidavit of defendant or some reputable person in his behalf.

■ An application for a continuance is addressed to the sound discretion of the trial judge. This Court will not interfere with the exercise of that discretion by the trial court unless it has been abused. There is no abuse of discretion. Appellant failed to comply with every single requirement of Criminal Rule 25.08. Appellant filed no written application and made no request for leave to supply the record. No showing of the names of the witnesses, their residence, their availability, what they would testify to, etc., was made. This case demonstrates woeful lack of diligence. Appellant's tardy reference to alibi witnesses stretches credulity. His first men-

tion of the existence of alibi witnesses occurred fourteen months after indictment, five months after the case was first set for trial, four months after his counsel was appointed, and not until the jury was in the box ready to try his case and the judge was directing the trial to proceed. He "* * * should not wait until the very minute of trial to determine if a witness he contends to be material to his defense is available." State v. Scott, Mo.Sup., 338 S.W.2d 873, 876. Under the applicable rule the trial court had no alternative but to overrule the application.

Examination of the record as required by Criminal Rule 28.02, V.A.M.R. discloses no error.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.