**STATE of Missouri, Respondent,**

v.

**Gaylon JOHNSON, Appellant.**

**No. WD 40772.**

Missouri Court of Appeals,
Western District.

Feb. 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied
June 13, 1989.

home at 3:30 a.m. June 25. At that time, Anderson was driving because Johnson was either asleep or unconscious. Anderson entered the house leaving Johnson in the automobile.

Sometime later, after Anderson had undressed for bed, Johnson entered the house yelling and cursing. He attacked Anderson and repeatedly struck her with his fists and feet hitting her in the face, back, head and legs. Anderson eventually managed to escape by climbing out a bathroom window and fleeing to the home of a neighbor. She was taken from there to a hospital emergency room where she was treated and released the afternoon of June 26.

Roy W. Brown, Bruce B. Brown, Kearney, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

Gaylon Johnson was tried and convicted of the offense of first degree assault. As a prior offender, he was sentenced by the court to a term of life imprisonment. On this appeal, he contends, among other points, that the court erred in submitting the case to the jury because the state failed to prove beyond a reasonable doubt that the victim in the case suffered serious physical injury, an essential component of first degree assault. We therefore first recount the facts of the event, which were essentially undisputed.

At the time in question in June of 1987, Johnson was living with the victim, Teresa Anderson. The pair frequently argued and engaged in physical altercations. During the afternoon and evening of June 24, Johnson and Anderson drove in an automobile to various places in Kansas City, Plattsburg and Holt consuming alcoholic beverages. They returned to the Johnson

## I.

In his first point, Johnson contends the injuries suffered by Anderson did not meet the statutory requirement of "serious physical injury" because there was no substantial risk of death in consequence of the beating and no serious disfigurement or protracted loss or impairment of the function of any bodily member or organ. He argues that proof of such injury was necessary before he could be convicted of assault in the first degree under § 565.050.1, RSMo 1986.[1]

Although the words of the statute, "serious physical injury," are defined to include those instances where the assault results in a substantial risk of death, the latter term is not itself defined. The meaning as related to a particular set of facts must therefore be gleaned from the words themselves taken in their ordinary significance and usage.

At a minimum, substantial risk of death suggests a condition of endangerment with cause for apprehension of life-threatening consequences. Obviously, however, the survival of the victim demonstrates that the ultimate event was avoided and that the injury was therefore not one predictably certain to result in death. This circumstance is indicated by use of the word "risk" which connotes something less

1. All statutory references are to RSMo 1986.

than a probability or likelihood. *State v. Ellis,* 639 S.W.2d 420, 422 (Mo.App.1982). The mere fact that a victim of an assault recovers without residual damage does not render proof of serious physical injury insufficient. *State v. Emory,* 643 S.W.2d 24, 27 (Mo.App.1982). The question is whether the injuries inflicted in the assault, viewed objectively, are of a degree of severity sufficient to raise a legitimate concern either that the victim could expire or could suffer more than a momentary loss of a bodily function.

■ In the present case, the evidence most favorable to the state's case showed that when Anderson reached the neighbor's house, her hair, face and mouth were covered with blood and she was bleeding from the head. She lost consciousness but was revived with an ammonia capsule. She again lost consciousness, was not breathing and no pulse was detected. She was twice resuscitated by cardiopulmonary resuscitation before an ambulance arrived. At the hospital, Dr. Amick found multiple contusions, abrasions and swelling about the victim's face, hemorrhages in the conjunctival area, bleeding from the nose and mouth, bite marks at various points, bleeding from the rectum and swelling in the neck which caused difficulty in breathing.

Dr. Amick testified that when Anderson was first seen at the emergency room, he suspected "serious physical damage" by reason of head injuries caused when Anderson was taken by the hair and repetitively thrown against a wall, and also because of obstruction in the throat caused by choking. Dr. Amick also acknowledged that he could not confirm the presence of a concussion of the brain, there were no fractures and within twenty-four hours, the respiratory distress had ceased.

Johnson argues that the injuries he inflicted upon Anderson were not serious because Dr. Amick's initial concerns about life threatening consequences from the blows inflicted to the victim's head and the breathing impairment caused by choking were later proved unfounded. Johnson says that Dr. Amick's original suspicion that Anderson may have suffered a concus-

sion and a laryngeal obstruction, both of life-threatening dimensions, was dispelled by subsequent examination and should be discounted as proof of serious physical injury.

The contention misses the point that "substantial risk" as a definitive term indicates a condition where the expectation of fatal consequences is legitimately entertained initially but the ultimate result is otherwise. The question is not whether the victim suffered a fatal beating, as Anderson obviously did not, but whether the apparent injuries inflicted would reasonably prompt a concern for the victim's survival.

In this case, the multiple manifestations of head injuries and the attempted strangulation provided a reasonable basis for Dr. Amick to entertain a concern for Anderson's survival when he first examined her in the hospital emergency room. His testimony to that effect, coupled with the evidence that Anderson had repeatedly lost consciousness at the home of the neighbors and had ceased breathing, were sufficient to warrant submitting the case of first degree assault to the jury. It is irrelevant to the contention on appeal that a fact finder could have reached a different conclusion when weighing also the evidence of Anderson's limited hospital stay and apparent uneventful recovery from her injuries. Johnson's first point is rejected.

## II.

■ Johnson's second point argues that the trial court erred when it refused to instruct the jury on lesser included offenses proposed under Johnson's tendered instructions A, B and C. Those offenses were second degree assault, third degree assault and attempted first degree assault, §§ 565.060, 565.070 and 565.050. The differences among the classes of assault lie in the mental state of the accused and the nature of the injury. As applicable to this case, second degree assault involves serious physical injury caused recklessly rather than knowingly. Third degree assault is also characterized by reckless conduct which results in non-serious physical inju-

ry. An attempt under § 565.050 is, as the term suggests, an assault which is not consummated.[2]

Johnson argues here that his state of intoxication entitled him to an instruction on "reckless" conduct, and the nature of Anderson's actual injuries entitled him to an instruction using the term "physical injury." He cites *State v. Ellis, supra*, to support his claim.

■ Considering first the question of whether Johnson was entitled to an instruction on second degree assault based on reckless rather than knowing conduct, we conclude he was not.

■ Direct proof of mental state in a criminal case is seldom available and such intent is usually inferred from circumstantial evidence. *State v. Brown*, 660 S.W.2d 694, 699 (Mo.banc 1983). A defendant's mental state may be determined from evidence of his conduct before the act, the act itself and from the defendant's subsequent conduct. *State v. Runyon*, 619 S.W.2d 955, 957 (Mo.App.1981).

In this case, the assault committed upon Anderson consisted of repeated acts, first in a bedroom, then in a bathroom where Anderson had gone to escape, then back to the bedroom and again in the bathroom. At one point, Johnson told his parents he intended to kill Anderson and after the assault, while in custody, Johnson repeated the statement. The only evidence to which Johnson points in arguing that his conduct could be deemed to have been reckless was his own testimony that he had memory lapses and did not recall the events of the night in question. We reject alcohol intoxication as a factor to be considered. Section 562.076.

This case is similar to *State v. Burns*, 759 S.W.2d 288 (Mo.App.1988), in that the record does not include any evidence upon which a jury could have found that Johnson did not act knowingly but did act recklessly. Johnson's claim to have no memory of the assault is no evidence of reckless con-

duct. The court therefore correctly refused to instruct the jury on any lesser offenses based on reckless conduct.

■ The second prong of the instruction argument focuses on Johnson's claim that the evidence supported a finding that Anderson suffered physical injury, not serious physical injury. The problem with this contention is that the only subsections of § 565.060 defining second degree assault and § 565.070 defining third degree assault which could apply under the facts of this case are appropriate only to reckless conduct. The determination reached above that no evidence in the case would support a submission of reckless rather than knowing acts necessarily excludes submission of the lesser degrees of assault irrespective of whether the injuries were or were not within the statutory definition of serious.

■ Finally, as to instruction on first degree assault as an attempt and therefore a class B felony under § 565.050, that prospect is foreclosed to Johnson because the assault was unquestionably completed, in whatever degree it be classified. A defendant is not entitled to an instruction on an attempt where the proof shows the offense was consummated. *State v. McDaris*, 411 S.W.2d 126, 128 (Mo.1967). Johnson's second point is denied.

### III.

■ The third point Johnson raises deals with challenges to veniremen who Johnson claims should have been excused for cause. According to the record, five of the veniremen had at some time in the past been represented in legal matters by the prosecuting attorney and eight others were personally acquainted with him. Johnson contends he was deprived of a complete panel of qualified jurors when he was compelled to use peremptory challenges to remove a number of the prosecutor's acquaintances from the venire.

---

**2.** An intentional assault, committed knowingly rather than recklessly, which results only in physical injury not of life-threatening dimensions, is not a statutory crime unless committed by means of a deadly weapon or dangerous instrument. There was no evidence in this case that Johnson used a deadly weapon or dangerous instrument.

The problem with appellant's point is that no evidence of any bias or prejudice on the part of the veniremen in question was shown. To the contrary, the voir dire examination of the panel by Johnson's attorney indicated that all of the panel members who knew the prosecutor were prepared to put that circumstance behind them and give the defendant a fair and impartial trial. The claim of disqualification was based purely and solely on speculation. In this situation, it was not error on the part of the trial court to deny the challenges. *State v. Wraggs,* 512 S.W.2d 257 (Mo.App. 1974). The point is without merit.

## IV.

Johnson asserts in a fourth point that his sentence to a life term of imprisonment was violative of the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment. He contends this is so because the sentence does not meet, in particular, the first part of a proportionality test announced in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

In *Solem,* the court described three part criteria by which the reasonableness of a sentence could be judged: (1) the gravity of the offense, (2) other sentences imposed in the state of the offense, and (3) sentences imposed for the same crime in other jurisdictions. Johnson primarily argues that the gravity of the offense in his case was mitigated by (a) the relationship between appellant and the victim as living companions, (b) a history of violence in the relationship including some unspecified provocation, (c) the effect of Johnson's intoxication, and (d) the absence of permanent physical injury to Anderson. He also cites several other cases of assaults which he says were attended by greater violence but which involved substantially lesser terms of imprisonment.

The first question for decision is whether the facts of this case justify a proportionality review. The court in *State v. Carlton,* 733 S.W.2d 23 (Mo.App.1987), faced with a similar issue, adopted the view that no test of proportionality became involved unless the sentence imposed was grossly disproportionate to the gravity of the offense. The *Carlton* court found sentences of life for first degree robbery and seven years for attempted kidnapping not grossly disproportionate. Just what may constitute gross disproportionality is not stated and may be incapable of description.

A number of opinions from the courts of other states and from the federal circuit courts of appeal, cited in *Carlton,* have rejected the need for a proportionality review under various circumstances. In particular, the opinion in *United States v. Meyer,* 802 F.2d 348, 353 (9th Cir.1986), cert. denied, —— U.S. ——, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987), indicates that sentence review under *Solem* is not required to harmonize all sentences and that the trial judge has discretion to impose any sentence within statutory limits. This view conforms with the opinions of the Missouri Supreme Court when faced with a proportionality issue under the Missouri Constitution.

In *State v. Deckard,* 426 S.W.2d 88, 91 (Mo.1968), the court stated that punishment set within the limits fixed by the legislature is not disproportionate and that the circumstances of particular cases have resulted in wide ranging terms of sentence as a necessary product of the sentencing latitude which the statutes provide. In *State v. Bell,* 719 S.W.2d 763, 766 (Mo. banc 1986), the court limited proportionality review to cases where the sentence was so disproportionate to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances.

It would appear that gross disproportion as used in *Carlton* and shock to the moral sense as used in *Bell* are terms intended to convey the concept that proportionality review is required under *Solem* only in rare instances, if at all, and that *Solem* is more theoretical doctrine than practical directive. At least it may be said that sentence review is constitutionally required only in cases where it would generally be agreed that the discretionary latitude allowed by the legislature in setting ranges of punish-

ment has been obviously abused by the sentencing authority in a particular case.

 In the present case, the mitigating factors upon which Johnson relies have no relevance unless it be found that a sentence of life, with a current possibility for parole in twenty years, is grossly disproportionate or morally shocking in relation to the crime of first degree assault committed by a prior offender. Considering the facts that assault under § 565.050 as submitted in this case necessarily involved a substantial risk of death to the victim, that Johnson was sentenced by the court as a prior offender, and that the legislature has provided for the penalty of a life sentence where first degree assault qualifies as a class A felony, there is in Johnson's sentence no gross disproportionality and no shock to the moral sense of reasonable men. Any occasion for conducting a proportionality examination is therefore obviated. The point is denied.

### V.

In a final point, Johnson seeks plain error review on the claim that the court should have instructed the jury on the lesser included offense of second degree assault committed by use of a dangerous instrument thereby permitting conviction for a class C felony. As was previously discussed under Point II, the tendered instruction for second degree assault, § 565.060.1(3), was properly refused because the element of the mental state, recklessly, was not compatible with the proof. Under § 565.060.1(2), however, if a dangerous instrument is employed in the assault, the mental state is knowingly and the consequence need not be serious physical injury, only physical injury. Johnson claims the latter section was conformable to the evidence if his fists be deemed dangerous instruments.

Whether Johnson could sustain the dubious contention that his fists constituted dangerous instruments, a proposition for which no evidence appears of record, the complaint fails to qualify for plain error relief. Under the plain error standard of review, the error complained of must impact so substantially upon the rights of the defendant so that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Driscoll,* 711 S.W.2d 512, 515 (Mo.banc), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed. 2d 301 (1986). There was no demonstrable miscarriage of justice or manifest injustice in Johnson's conviction here. Plain error relief is simply not available.

It is to be noted, parenthetically, that rejection of the point for plain error consideration does not suggest that the claim would have potential merit had it been preserved. The evidence on the subject of the beating administered to Anderson showed that Johnson inflicted injuries to Anderson when he grabbed her by the hair and beat her head against a door casing and later against plumbing fixtures. Johnson also kicked her in the back and legs with his feet and bit her with his teeth. No more reason was shown to label Johnson's fists as dangerous instruments than his feet or teeth. It was, under the facts here, untenable to suggest that the dangerous instrument or deadly weapon components of the statute were implicated. The point is denied.

The judgment is affirmed.

All concur.