**STATE of Missouri, Respondent,**

v.

**Danny Lee ADAMS, Appellant.**

**No. 16902.**

Missouri Court of Appeals,
Southern District,
Division One.

April 9, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied April 29, 1991.

Application to Transfer Denied
June 11, 1991.

James J. Knappenberger, Shaw, Howlett & Knappenberger, Clayton, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant Danny Lee Adams, tried as a prior offender, § 558.016.2,[1] and persistent

---

1. References to statutes are to RSMo 1986 except where otherwise indicated.

offender, § 558.016.3, was found guilty by a jury of the class A felony of assault in the first degree, § 565.050, and sentenced by the trial court to 20 years' imprisonment.

Appellant presents six assignments of error. They require a synopsis of the evidence.

The victim was Steven Ray Nimon, date of birth February 8, 1985.

The State's evidence established that "at the very end of July," 1988, Steven's mother, Ellen Suzette ("Suzy") Huntley, began living with appellant (then age 28) in the home of appellant's mother, Lois Adams. Steven did not live with Suzy and appellant "at first." Instead, Steven resided with Suzy's mother and stepfather. However, by September 9, 1988, Steven was evidently living in the Adams household.

That evening (Friday, September 9) Suzy and appellant, accompanied by Steven, visited Rick and Theresa Johnston at the latters' home. Suzy testified appellant drank "ten or eleven" beers, smoked marijuana, and took "PCP pills."

Suzy, Steven and appellant returned to Lois Adams' house "around midnight." According to Suzy, appellant "was pretty well drunk, intoxicated." Additionally, appellant was angry, "mostly" at Steven.

Suzy testified she went into the bathroom, and as she came out she heard Steven crying. She entered the living room and saw Steven on the couch. Appellant was standing beside the couch. Suzy's testimony:

> "I asked Danny what was wrong.... [H]e told me to shut up. Steven got up off the couch and was crying and Danny picked him up by the throat choking him and then threw him back on the couch.
>
> Q. For how long did he choke him?
>
> A. He picked him up, maybe five, six seconds, and then threw him on the couch.... I could see Steven kind of, you know, gasping.
>
> Q. What did you do at this time?
>
> A. I went over towards Danny. I was going to get Steven and Danny told me to shut up and leave him alone. And

he slapped me and I kind of fell back into the chair.

> Q. What did he do immediately after choking the child? What did he do to the child?
>
> A. He choked him, picked him up off the ground and choked him and threw him on the couch a couple of times, two times. And then Steven got up and was on the floor and Danny kicked him and knocked him—
>
> . . . .
>
> Q. How many times did he kick him?
>
> A. All through the time he was doing it I'd say four or five times.
>
> Q. Where at on the child's body did he kick him?
>
> A. Back of the legs, the body area, the butt.
>
> Q. What did he do to you?
>
> A. Well I tried to stop Danny.... I tried to go forward and stop him and he turned around and he back handed me on this left side and knocked me down and I fell back on my bottom.... He just kept telling me to shut up, shut up. I kept trying to maybe talk him out of not doing it and he come up and choked me."

According to Suzy, Lois Adams entered the living room during the melee and implored appellant to leave Steven alone. Suzy recalled:

> "Danny hollered at her and said you're only making it worse saying this. You're only making it worse, and he forcibly grabbed Steven away from her. She got him twice and Danny got him back.
>
> Q. What other things did the defendant Danny Adams say during all this?
>
> A. ... he was fighting at me and at his mother and Steven, because his mother was trying to stop him from doing it. We were both trying to talk to him and stop him from doing it. And he was telling us that he had a gun and he was going to shoot us all. He keeps telling us we was all going to die tonight. And at one time he had knocked Steven on the floor and he asked Steven he says your mommy is going to die tonight. And he

said are you ready to die? You're going to die, and Steven said yes."

Suzy testified appellant "finally just passed out" on the living room floor. He awoke intermittently during the next several hours but engaged in no further violence.

At daylight, appellant went into the bedroom and laid on the bed. Suzy then fled with Steven to a neighbor's house. The neighbor telephoned the residence of Suzy's mother. Suzy's stepfather picked up Suzy and Steven.

Upon arriving at her mother's home, Suzy called the police. Later that morning (Saturday, September 10) Suzy took Steven to a hospital where he was examined by an emergency room physician.

The physician testified Steven had three large hematomas—"collections of blood"—beneath the scalp. The skin surface was bruised in those areas. Steven's nose was swollen and there was dried blood in the nostrils. There were small ruptured blood vessels in the whites of the eyes and around the eyelid and the maxillary area of the face. Inside Steven's mouth the gum was bruised from the teeth on both sides, and "the lip had been torn from the gum." Steven had "a large circular bruise about the neck, which was totally circumferential." This was consistent with the neck being held tightly.

Additionally, bruising appeared on the front and back of Steven's chest wall, his upper arms, and both ears. There was also a large bruise on a thigh and in the area of his penis. The physician's testimony continued:

"Q. Based upon reasonable medical certainty, can you tell us whether or not these injuries were serious physical injuries?

. . . .

A. These are injuries that in the medical profession are considered life threatening, especially in a three year old because blows to the ear and the temporal regions of the scalp are dangerous to the child in the area of causing a cerebral bleed, temporal basaler [sic] type fractures which bleed easily.

Also, the amount of force about the neck could have caused ... would commonly cause not enough blood supply to the brain at the same time it would cause this type of bruising and injury."

Appellant did not testify but did present his mother, Lois, as a defense witness. Lois testified she entered the living room after hearing "a racket." She saw Suzy "joshing [Steven] up and down on the floor." Lois told Suzy to leave Steven alone. That made Suzy mad. Lois narrated: "So she picked him up and throwed him down on the pallet. And as she done that then she kicked him." Lois described Suzy as "doped up and half drunk." According to Lois, appellant tried unsuccessfully to get Suzy to leave Steven alone. Finally, appellant "back handed her." Lois testified Suzy then made Steven stand in a corner but when he continued crying she grabbed him again. Appellant tried to pull her off and "back slapped her." Suzy began scratching and tore appellant's shirt. Suzy ultimately went to sleep on the floor. The next morning she took Steven and departed.

■ Appellant's first point relied on avers the trial court wrongly denied a motion by appellant for a continuance. The point has the following background.

On October 2, 1989, the case was set for jury trial February 6, 1990. A jury panel was summoned and appeared on the appointed date. Appellant appeared in person with his retained lawyer.[2] The prosecutor announced ready for trial. The trial court inquired, "Is the defendant in Court and ready?"

Appellant's lawyer replied, "In Court and ready, your Honor."

Voir dire was then conducted, after which the trial court declared a recess. During the recess appellant's lawyer told the trial court.

2. The lawyer representing appellant in this appeal is not the lawyer who represented him in

the trial court he had been trying to subpoena Rick and Theresa Johnston who "previously testified favorably for [appellant]." Appellant's lawyer stated his associate was unsuccessful in subpoenaing the Johnstons the day before trial. Consequently, said the lawyer, "[T]here may be a problem with them coming, for whatever reason." He added: "We don't know why unless maybe at the last minute they decided [sic] they didn't want to get involved. And so for that reason we ask for a continuance on the record."

The trial court denied the request.

Appellant maintains the denial deprived him of his constitutional right to present witnesses in his behalf.

Rule 24.09[3] states:

"An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally."

The prosecutor did not consent that appellant's application for continuance be made orally. Hence, appellant's failure to request the continuance by written motion accompanied by the required affidavit is a sufficient basis for us to uphold the trial court's ruling. *State v. Harris,* 781 S.W.2d 137, 144–45 (Mo.App.1989); *State v. Tettamble,* 746 S.W.2d 433, 438–39[6] (Mo. App.1988); *State v. Merrick,* 677 S.W.2d 339, 342[4] n. 2 (Mo.App.1984); *State v. Diamond,* 647 S.W.2d 806, 808[2] (Mo.App. 1982).

Furthermore, as noted above, the request came after appellant's lawyer had announced ready for trial and the parties had conducted voir dire.

In *State v. Boykins,* 399 S.W.2d 70 (Mo. 1966), after the trial proceedings had commenced but before the jury was sworn, the accused's lawyer orally requested a continuance to obtain the attendance of two alleged alibi witnesses. Upholding the trial court's denial of the request, the Supreme Court of Missouri noted that such request had not come until the jury was in the box ready to try the case and the judge was directing the trial to proceed. *Id.* at 74. The Supreme Court said, "[The accused] should not wait until the very minute of trial to determine if a witness he contends to be material to his defense is available." *Id.*

In *Tettamble,* 746 S.W.2d at 438–39, the accused and his lawyer appeared for trial on the scheduled date and the lawyer announced ready for trial. After the jury had been selected, but before it was sworn, the accused's lawyer orally requested a continuance because of the absence of an alibi witness allegedly in jail in another county. The trial court denied the request. Upholding that ruling, this Court noted an application for a continuance in a criminal case is addressed to the sound discretion of the trial court, and an appellate court will not interfere unless it clearly appears such discretion has been abused. *Id.* at 440[7]; *State v. Scott,* 338 S.W.2d 873, 876[4] (Mo. 1960).

In *Tettamble* this Court held that because of the accused's failure to (a) comply with Rule 24.09, (b) check with the proper authorities prior to trial regarding service of a writ for production of the alleged witness, and (c) ask for a continuance until after the jury had been selected, the trial court did not abuse its discretion in denying the requested continuance. 746 S.W.2d at 440.

Analogous circumstances exist here. Appellant's lawyer evidently waited until the day before trial to attempt to subpoena the Johnstons. He announced ready for trial on the scheduled date without alerting the trial court about the Johnstons' absence. Only after voir dire did appellant's lawyer bring the matter to the trial court's attention.

It might have been possible to proceed with the trial and present all of the avail-

**3.** Rule references are to Missouri Rules of Criminal Procedure (1990) except where otherwise indicated.

able witnesses for each side, then recess overnight to see whether the Johnstons could be produced the following day. However, appellant's lawyer did not request that, nor did he offer any clue as to when the Johnstons might be found.

The trial court thus had a choice between going ahead with the trial already under way or granting the continuance, thereby aborting the trial. The latter option would have meant rescheduling the trial, reassembling the witnesses (including the physician who practices in an adjoining county), and resummoning a venire.

Had the Johnstons been subpoenaed in timely fashion, had their absence resulted from illness, accident, or some other unexpected cause, and had appellant's lawyer brought the matter to the trial court's attention before commencing voir dire, appellant would have had a stronger argument for a continuance. However, none of that occurred.

Additionally, it is clear the Johnstons were not eyewitnesses to the assault. Appellant concedes the Johnstons' testimony would have been limited to whether it was Suzy or appellant who was in an intoxicated or drugged condition when the latter duo left the Johnstons' residence.

A very strong showing is required to prove trial court abuse of discretion in denial of a motion for continuance. *State v. Nave*, 694 S.W.2d 729, 735[4] (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986). On the record here, we hold the trial court did not abuse its discretion in denying the requested continuance. Appellant's first point is denied.

■ His second point asserts the trial court erred in denying his motion for judgment of acquittal at the close of *the State's* evidence. Appellant maintains the State presented no evidence he caused "serious physical injury" to Steven.

After the trial court denied appellant's motion for judgment of acquittal at the close of the State's evidence, appellant presented evidence in his behalf. By doing so he waived any error with respect to denial of his motion. *State v. Christeson*, 780 S.W.2d 119, 122[2] (Mo.App.1989); *State v. Jackson*, 780 S.W.2d 114, 115[2] (Mo.App.1989); *State v. Wheadon*, 779 S.W.2d 708, 710[2] (Mo.App.1989); *State v. Dusso*, 760 S.W.2d 546, 547[2] (Mo.App. 1988).

■ Appellant ultimately moved the trial court for judgment of acquittal at the close of *all* the evidence. The trial court also denied that motion. Appellant assigned this ruling as error in his motion for new trial.

However, his second point relied on here does not attack the trial court's denial of the motion for judgment of acquittal at the close of *all* the evidence. The point attacks only the ruling at the close of *the State's* evidence.

Appellate review will be made only of matters raised in the "points relied on" in an appellant's brief. *State v. Mooney*, 714 S.W.2d 216, 218[1] (Mo.App.1986); *State v. Hanson*, 587 S.W.2d 895, 903[19] (Mo.App. 1979). A claim of error not set forth in a point relied on is not preserved for appellate review. *State v. Myers*, 538 S.W.2d 892, 896[9] (Mo.App.1976).

Appellant's second point is consequently an anomaly. It asserts a claim of error appellant waived in the trial court (the denial of his motion for judgment of acquittal at the close of the State's evidence), and fails to assert a claim of error he preserved in the trial court (denial of his motion for judgment of acquittal at the close of all the evidence).[4]

---

4. We emphasize this is not an instance where an accused failed in the trial court to preserve a challenge to the sufficiency of *all* the evidence to support a guilty verdict, *then attempted to raise that issue on appeal*. In such situations the Supreme Court of Missouri has held the issue may be considered as plain error. *State v. Guelker*, 548 S.W.2d 521, 523[1] (Mo. banc 1976), *cert. denied*, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977); *State v. McClunie*, 438 S.W.2d 267, 268[2] (Mo.1969). In the instant case appellant did preserve in the trial court his challenge of the sufficiency of all the evidence to support the verdict. The problem in this appeal is that appellant does not present that challenge in his point relied on.

■ We have nonetheless decided to review all the evidence *ex gratia* per Rule 30.20 [5] to determine whether it is sufficient to support a finding that appellant inflicted "serious physical injury" on Steven.

Section 565.050 reads:

"1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony."

Section 556.061(26), RSMo Supp.1987, reads:

" 'Serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]"

Appellant correctly points out that in order for assault in the first degree to constitute a class A felony, the culprit must inflict serious physical injury on the victim. *State v. Williams,* 728 S.W.2d 690, 692 (Mo.App.1987). Appellant reminds us of the statutory definition of serious physical injury (§ 556.061(26), RSMo Supp.1987, quoted above), and asserts Steven did not suffer serious disfigurement or protracted loss or impairment of the function of any part of his body. Consequently, says appellant, the dispositive issue is whether Steven's injuries created a substantial risk of death, thus rising to the statutory standard of "serious physical injury." Appellant emphasizes Steven suffered no broken bones, sustained no injury to a vital organ, and was not hospitalized.

In determining whether the evidence is sufficient to support the verdict we view the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v.*

*Guinan,* 665 S.W.2d 325, 327 (Mo. banc), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Our function is not to weigh the evidence, *State v. Kelly,* 539 S.W.2d 106, 109[3] (Mo. banc 1976), but to determine only whether there was sufficient evidence from which a rational fact finder could have found appellant guilty beyond a reasonable doubt. *State v. Bonuchi,* 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983).

In *State v. Johnson,* 770 S.W.2d 263 (Mo. App.1989), the accused was convicted of assault in the first degree. On appeal he argued the evidence was insufficient to support a finding that he inflicted serious physical injury on the victim. Affirming the conviction, the Western District of this Court said:

"Although the words of the statute, 'serious physical injury,' are defined to include those instances where the assault results in a substantial risk of death, the latter term is not itself defined. The meaning as related to a particular set of facts must therefore be gleaned from the words themselves taken in their ordinary significance and usage.

At a minimum, substantial risk of death suggests a condition of endangerment with cause for apprehension of life-threatening consequences. Obviously, however, the survival of the victim demonstrates that the ultimate event was avoided and that the injury was therefore not one predictably certain to result in death. This circumstance is indicated by use of the word 'risk' which connotes something less than a probability or likelihood. *State v. Ellis,* 639 S.W.2d 420, 422 (Mo.App.1982). The mere fact that a victim of an assault recovers without residual damage does not render proof of serious physical injury insufficient. *State v. Emory,* 643 S.W.2d 24, 27 (Mo. App.1982). The question is whether the injuries inflicted in the assault, viewed

---

**5.** Rule 30.20, Missouri Rules of Criminal Procedure (1991), reads in pertinent part: "... Whether briefed or not, plain errors affecting substantial rights may be considered in the dis-

cretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

objectively, are of a degree of severity sufficient to raise a legitimate concern either that the victim could expire or could suffer more than a momentary loss of a bodily function." *Johnson,* 770 S.W.2d at 265–66.

Applying this rationale to the evidence here, we note the physician testified Steven's injuries "are considered life threatening" by the medical profession, especially when inflicted on a victim Steven's age. The physician set forth the medical reasons for that conclusion.

*Johnson* emphasizes the issue is not whether the victim suffered a fatal beating, but whether the injuries inflicted would reasonably prompt a concern for the victim's survival. 770 S.W.2d at 266. We hold that standard was met here by the physician's testimony that Steven's injuries are considered life threatening when inflicted on a victim his age. Appellant's contention that the evidence was insufficient to support the verdict is denied.

■ His third point maintains the trial court erred in failing to declare a mistrial after the prosecutor presented rebuttal testimony by the physician. Appellant points out the trial court, at the outset of the trial, imposed "the rule on witnesses," barring the witnesses for both sides from the courtroom except during their own testimony.

As reported earlier, appellant's mother testified as a defense witness. After the defense rested the prosecutor recalled the physician to the witness stand and this dialogue ensued:

"Q. ... were you in the courtroom just now throughout all of Lois Adams' testimony?

A. Yes I was.

. . . .

Q. Was her testimony consistent with the injuries that you observed on Steven?

A. No.

[Appellant's lawyer:] Your Honor, I object to the question and ask that the answer be stricken. I called for the rule on witnesses at the beginning of the case."

The trial court and counsel discussed the matter outside the hearing of the jury. At the end of the conference the trial court sustained the objection. Proceedings resumed in the presence of the jury and this colloquy occurred:

"[Appellant's lawyer]: Judge, my affirmative relief is that you ask the jury to disregard and [the] answer be stricken from the record.

THE COURT: All right, the jury will disregard the last response of [the physician] and it is stricken from the record."

Appellant makes no claim on appeal that he moved for a mistrial because of the physician's rebuttal testimony, and our examination of the transcript confirms no such motion was made. The transcript demonstrates the trial court granted appellant all the relief he requested. In such circumstances appellant cannot now complain that a mistrial should have been declared. *State v. Allen,* 429 S.W.2d 697, 698–99[1] (Mo.1968); *State v. Woods,* 723 S.W.2d 488, 497[3] (Mo.App.1986). Appellant's third point is denied.

■ His fourth point avers the trial court erred in allowing the prosecutor to file a first amended information on the day of trial charging him as a prior and persistent offender. Appellant asserts he was surprised and disadvantaged, as his "intended evidence was not equally applicable after the amendment." Appellant's argument, as we comprehend it, is that prior to the amendment his trial strategy was to contradict the prosecution's case and create uncertainty in the minds of the jurors "in pursuit of sentencing leniency by the jury." This strategy, says appellant, was destroyed by the amended information.

The prosecutor asked leave to file the first amended information the morning of trial. Its only change from the original information was the addition of the prior and persistent offender allegations. The prosecutor stated, "I've informed [appellant's lawyer] prior to today that that would be filed here."

Appellant's lawyer said: "I'm opposing it just on general terms of filing it here on the day of trial. And secondly, he's alleg-

ing some pleas which if he has the files, I just want to look at them.... My objection, Judge, is limited to the late filing of the first Amended Information which for the record obviously is filed here the day of trial. I've looked over the files of the State. I'm not going to require the Clerk to come here and testify with regard to the contents or with regard to the sentence, as they are certified. That's my objection."

The trial court overruled the objection and granted the prosecutor leave to file the first amended information.

A point on appeal must be based upon the theory voiced in the objection at trial; an accused cannot expand or change on appeal the objection as made. *State v. Franks*, 685 S.W.2d 845, 848[7] (Mo.App. 1984); *State v. Cannady*, 660 S.W.2d 33, 37[6] (Mo.App.1983); *State v. Lenza*, 582 S.W.2d 703, 710[13] (Mo.App.1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980); *State v. Peterson*, 545 S.W.2d 717, 719[4] (Mo.App.1977).

Nowhere in his objection at trial did appellant complain the first amended information prejudiced him by destroying his trial strategy. The objection registered by appellant's lawyer in the trial court appears to have been that he was unfamiliar with the court records the prosecutor intended to use in proving the prior and persistent offender allegations. Appellant's lawyer did not claim surprise, nor did he dispute the prosecutor's statement that he (the prosecutor) had informed him (appellant's lawyer) before the trial date that the first amended information would be filed. As the theory of appellant's fourth point was unmentioned in his objection at trial, it cannot be asserted here.

Furthermore, Rule 23.08 permits an information to be amended any time before verdict if no additional or different offense is charged and if the accused's substantial rights are not thereby prejudiced.

■ Invoking the prior and persistent offender statutes for sentencing purposes does not constitute a charge of any additional or different offense. *State v. Rogers*, 758 S.W.2d 199, 201–02[6] (Mo.App.

1988); *State v. Leake*, 608 S.W.2d 564, 565[1] (Mo.App.1980).

Appellant's contention that the addition of the prior and persistent offender allegations prejudiced his defense is unpersuasive. His lawyer, who had been notified by the prosecutor in advance of trial that the first amended information would be filed, announced ready for trial. We doubt he would have done so had he felt the prior and persistent offender allegations would thwart his trial strategy. That strategy was to try to convince the jury Suzy, not appellant, assaulted Steven. It was not impaired by the first amended information. Appellant's fourth point is denied.

■ His fifth point asserts the trial court erred in giving instruction 4 (MAI–CR 3d 302.04). Appellant insists the definition of reasonable doubt in that instruction reduces the State's burden of proof "from one of proof beyond a reasonable doubt to one whereby the juror may be merely firmly convinced of [appellant's] guilt, therefore encouraging a jury verdict that was against the weight of the evidence."

Appellant registered no objection to instruction 4 at trial, nor did he mention it in his motion for new trial. Where no timely objection is made to an instruction and no assignment of error regarding it is contained in an accused's motion for new trial, nothing pertaining to the instruction is preserved for appellate review. Rule 28.03; *State v. Holt*, 592 S.W.2d 759, 776 (Mo. banc 1980); *State v. W___ F. W___*, 721 S.W.2d 145, 152[7] (Mo.App.1986); *State v. Young*, 610 S.W.2d 8, 12[1] (Mo.App.1980), *cert. denied*, 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981).

Even were the point preserved it would be futile. The Supreme Court of Missouri holds the terms "reasonable doubt" and "proof beyond a reasonable doubt" are correctly defined by MAI–CR 3d 302.04. *State v. Murray*, 744 S.W.2d 762, 771[13] (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine*, 743 S.W.2d 51, 62–63[12] (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

This Court is constitutionally controlled by decisions of the Supreme Court of Missouri. Mo. Const. Art. V, § 2 (1945); *State v. Jones*, 703 S.W.2d 41, 42[1] (Mo.App. 1985). Appellant's fifth point is denied.

His sixth and final point is:

"The trial court committed prejudicial error by refusing to submit for the jury's consideration [appellant's] offered instruction D as to assault in the third degree and [appellant's] offered instruction on the class B felony of assault in the ... first degree because said instructions were mandatory as lesser included offenses of assault in the first degree and assault in the second degree on which the jury was instructed."

The trial court submitted the class A felony of assault in the first degree to the jury by instruction 5 (MAI–CR 3d 319.02).

At appellant's request, the trial court submitted assault in the second degree (a class C felony) to the jury by instruction 8 (MAI–CR 3d 319.12).

■ Appellant's sixth point indicates he offered two instructions that were refused: instruction D submitting assault in the third degree, and an instruction submitting the class B felony of assault in the first degree. Appellant maintains that on the evidence here the class B felony of assault in the first degree is a lesser included offense of the class A felony of assault in the first degree.[6]

We have scrutinized the record and found no offer by appellant of an instruction submitting the class B felony of assault in the first degree and no request by him that such an instruction be given.

In *State v. Olson*, 636 S.W.2d 318, 322–23[9] (Mo. banc 1982), the Supreme Court of Missouri squarely held that except in homicide cases an accused may not complain on appeal about a trial court's failure to give a "lesser-offense instruction" unless the accused requests it specifically. As appellant made no request for an instruction submitting the class B felony of

assault in the first degree he is barred from complaining here about the trial court's failure to give such an instruction.

■ Appellant did tender an instruction submitting the class A misdemeanor of assault in the third degree, § 565.070.1(1), RSMo 1986. That instruction (MAI–CR 3d 319.16) was marked instruction D by the trial court and refused. It hypothesized appellant "recklessly caused physical injury to Steven Lee [sic] Nimon by striking, kicking and choking him."

■ A trial court is not obligated to instruct the jury regarding a lesser included offense unless there is a basis for a verdict acquitting the accused of the offense charged and convicting him of the included offense. § 556.046.2; *State v. Lewis*, 642 S.W.2d 627, 630[6] (Mo. banc 1982). An accused is entitled only to instructions on lesser included offenses supported by the evidence. *State v. Robinson*, 639 S.W.2d 823, 824[2] (Mo.1982).

In *Johnson*, 770 S.W.2d 263, the accused was convicted of assault in the first degree. On appeal he argued the trial court erred in refusing to instruct the jury on sundry lesser included offenses, one of which was assault in the third degree, § 565.070, by recklessly causing physical injury to the victim. 770 S.W.2d at 166. The accused maintained his state of intoxication entitled him to an instruction submitting "reckless" conduct. *Id.* at 267.

Denying the claim of error, the Western District of this Court noted the evidence showed a series of violent acts by the accused against the victim (striking with fists and feet on the face, back, head and legs) and statements by the accused that he intended to kill the victim. The Western District held the record contained no evidence upon which a jury could have found the accused did not act knowingly but did act recklessly in inflicting the victim's injuries. *Id.* The Western District rejected the accused's alleged intoxication as a factor to be considered. *Id;* § 562.076.

---

**6.** As observed earlier, assault in the first degree is a class A felony if the culprit inflicts serious physical injury on the victim, otherwise it is class B felony. § 565.050.2; *Williams,* 728 S.W.2d at 692.

In the instant case, as we have seen, appellant's tendered instruction D hypothesized he "recklessly caused physical injury" to Steven.

While appellant's evidence (Lois Adams' testimony) contradicted the State's evidence (Suzy's testimony) that appellant was the person who assaulted Steven, there was no evidence to support a finding that appellant *recklessly* inflicted injuries on Steven. Suzy's testimony described a series of violent acts by appellant against Steven (choking, throwing and kicking) and threats to kill. The physician's description of Steven's injuries showed they resulted from several brutal acts by an attacker, not from an isolated instance of recklessness on anyone's part. Consequently, the evidence that appellant was the culprit supported only a finding that he knowingly inflicted Steven's injuries.

As there was no evidence to support a theory that appellant committed assault in the third degree by recklessly causing physical injury to Steven as hypothesized in appellant's tendered instruction D, the trial court did not err in refusing it.

Judgment affirmed.

MAUS, P.J., and PREWITT, J., concur.