STATE of Missouri, Respondent,

v.

Sandra Marie KENNEY, Appellant.

No. WD 55587.

Missouri Court of Appeals,
Western District.

Aug. 11, 1998.

Danieal H. Miller, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and SMART and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Sandra Marie Kenney appeals her convictions following jury trial for two counts of first degree assault, section 565.050,[1] and sentence to two consecutive fifteen-year terms of imprisonment for knowingly causing serious physical injury to Naomi Baum and her unborn child by hitting Ms. Baum and injecting ethylene glycol and cocaine into her body. Ms. Kenney raises several points on appeal. She claims that (1) the trial court erred in denying her motion for change of

1. All statutory references are to RSMo 1994.

venue, (2) the trial court never acquired jurisdiction of the charges against her because of defects in the original complaint and the information, (3) insufficient evidence was presented to prove the elements of first degree assault against Naomi Baum, (4) insufficient evidence was presented to prove the elements of first degree assault against Ms. Baum's unborn child, and (5) the trial court erred in denying her motion for a new trial. The judgment of convictions is affirmed in part and reversed in part, and the case is remanded.

### FACTS

Gregg Kenney was separated from his wife, Sandra Kenney, when he began an intimate relationship with Naomi Baum in May 1996. Ms. Kenney became very upset that her husband was seeing Ms. Baum and began to threaten Ms. Baum that she would beat her up. By the end of June, Ms. Kenney became obsessed with Ms. Baum, who had become pregnant with Mr. Kenney's child. She asked friends to telephone Ms. Baum to tell her "she was being watched." Ms. Kenney called Ms. Baum's supervisor and told him Ms. Baum was using drugs. She also asked her friends to find somebody to key Ms. Baum's car and slash her tires.

Ms. Kenney's obsession with Ms. Baum escalated toward the end of summer, and she began to recruit people to assault Ms. Baum and to kill her and her baby. Ms. Kenney told a friend that if something happened to the baby, her husband would come back to her. Eventually, she recruited Janet Lene, Richard Brinkman, and Mike Brice to attack Ms. Baum by threatening to have Mr. Brinkman sent back to prison for associating with Ms. Lene (apparently a violation of his parole). She told them that the purpose of the attack was to kill Ms. Baum and the baby.

Ms. Kenney devised three different plans to carry out the attack. Her first plan was to deliver a pizza to Ms. Baum with a poisonous substance inside of it. Her second plan was to follow Ms. Baum to her children's school and assault her there. Her third plan involved breaking into Ms. Baum's house when Mr. Kenney was at work and assaulting her. The third plan was finally carried out in November 1996.

Prior to the night of the attack, Ms. Kenney purchased $100 worth of cocaine from Mr. Brice. She wanted the threesome to inject Ms. Baum with the cocaine during the attack to kill her and her baby. She also gave Ms. Lene some money to purchase masks and glass cutters for the attack. On the night of November 20, 1996, Ms. Lene, Mr. Brinkman, and Mr. Brice went to Ms. Baum's house. They entered the house through a window in the basement. Ms. Baum, who had heard noises, turned on the basement light to see who was there. When the light came on, Ms. Lene fled. Mr. Brinkman and Mr. Brice sprayed Ms. Baum with mace and pushed her into a chair in the kitchen. Mr. Brice then injected her in the arm and in the stomach with cocaine and antifreeze. Both men hit Ms. Baum and kicked her in the face and in the stomach until she passed out.

In the meantime, Ms. Lene ran to her car and was driving around the block when she saw Mr. Brinkman and Mr. Brice running toward her. The men got in the car, and the threesome drove to Ms. Lene's house where they changed clothes. They put the clothes, shoes, masks, and syringes in a bag and took the bag to Travis Wood's house. Ms. Lene asked Mr. Wood to get rid of the evidence, and the next day he threw the bag in the woods. Some time later, Mr. Wood led police to the clothing and syringes. Lab tests revealed that the syringes contained cocaine and ethylene glycol, a component of antifreeze.

After the attack, Ms. Baum called for her children who were in another part of the house. Police and an ambulance were then called, and Ms. Baum was rushed to a nearby hospital. An emergency room doctor examined Ms. Baum and found that she had multiple bruises and abrasions on her face, around her eyes, on the side of her head, and on her neck and upper chest. Her nose was broken. She also had puncture wounds and bruising on her abdomen, belly, belly button, and umbilicus which were consistent with wounds caused by a hypodermic needle. A urine drug screen showed cocaine in her system.

The hospital did not test for ethylene glycol because there was no indication at the time that it was involved in the case.

Upon hearing about the attack the next day, Ms. Kenney seemed very excited and "thrilled that it happened." After Ms. Lene was arrested for the assault, Ms. Kenney talked to her in jail and told her not to tell police that she was involved. Eventually, Ms. Kenney was arrested and charged with two counts of first degree assault. A jury found her guilty of the charges. The court sentenced Ms. Kenney to two consecutive fifteen-year terms of imprisonment. This appeal followed.

## I. CHANGE OF VENUE

■ In her first point on appeal, Ms. Kenney claims that the trial court erred in denying her motion for change of venue based on section 545.473. She contends that her submission of eight affidavits stating that the inhabitants of Cole County were prejudiced against her entitled her to a change of venue as a matter of right under Rule 32.04 and section 545.490 and that the trial court erred in applying section 545.473, the Cole County venue statute.

Rule 32.04 and section 545.490 provide the procedure for obtaining a change of venue in a criminal proceeding for cause. Rule 32.04 provides that a change of venue may be ordered upon timely written application of the defendant for the following reasons:

> (1) the inhabitants of the county are prejudiced against the defendant; or
>
> (2) the state has an undue influence over the inhabitants of the county.

Rule 32.04(a). Section 545.490 provides, in pertinent part:

> in all cases in counties in this state which now have or may hereafter have a population of less than seventy-five thousand inhabitants if such petition for change of venue is supported by the affidavits of five or more credible disinterested citizens residing in different neighborhoods of the county where said cause is pending, then the court or judge in vacation, shall grant such change of venue, as of course, without additional proof.

§ 545.490. In this case, Ms. Kenney filed a timely written application of change of venue. In support of her motion, Ms. Kenney filed, pursuant to section 545.490, eight affidavits of citizens residing in different neighborhoods of Cole County addressing the pretrial publicity of the case and the prejudice of the county's inhabitants against her. In response to Ms. Kenney's motion, the prosecutor argued that section 545.473, the Cole County change of venue statute, applied rather than the section 545.490 "for cause" change of venue statute. Under section 545.473, a defendant with a case filed in a county with department of corrections and human resources facilities with a total average yearly inmate population in excess of two thousand persons shall show, to obtain a change of venue, either that the inhabitants of the county are prejudiced against him or that the state has an undue influence over the inhabitants of the county. § 545.473; *State v. Gilley*, 785 S.W.2d 538, 539 (Mo. banc 1990). The trial court agreed that section 545.473 was the applicable statute in this case and found that Ms. Kenney failed to make the necessary showing for change of venue. The question presented in Ms. Kenney's first point on appeal, therefore, is which change of venue statute applied in this case.

■ The Missouri Constitution authorizes the Missouri Supreme Court to make procedural rules. *State v. Reese*, 920 S.W.2d 94, 95 (Mo. banc 1996). Article V, section 5 of the Missouri Constitution grants the Missouri Supreme Court the power to "establish rules relating to practice, procedure and pleading for all courts ... which shall have the force and effect of law." MO. CONST. Art. V, § 5. The Missouri Supreme Court may not, however, "change substantive rights, or ... the right of appeal." *Id.* "Supreme Court rules govern over contradictory statutes in procedural matters unless the General Assembly specifically annuls or amends the rules in a bill limited to that purpose." *Reese*, 920 S.W.2d at 95 (quoting *Ostermueller v. Potter*, 868 S.W.2d 110, 111 (Mo. banc 1993)).

■ The rules which permit change of venue are procedural. *State v. Vertner*, 779

S.W.2d 703, 707 (Mo.App.1989)(quoting *State ex rel. Peabody Coal Co. v. Powell*, 574 S.W.2d 423, 426 (Mo. banc 1978)). Because venue rules are procedural, they supersede contradictory statutes unless specifically annulled or amended by the legislature. *Reese*, 920 S.W.2d at 95.

■ The Cole County change of venue statute, section 545.473 provides:

**Cole County, change of venue, procedure.**–1. Notwithstanding Missouri supreme court rule 32.03, a defendant with a case filed in a county with department of corrections and human resources facilities with a total average yearly inmate population in excess of two thousand persons shall follow the procedure listed in subsections 2 through 5 of this section in order to obtain a change of venue for misdemeanors or felonies.

2. Upon written application of the defendant, a change of venue may be ordered in any criminal proceeding for the following reasons:

(1) That the inhabitants of the county are prejudiced against the defendant; or

(2) That the state has an undue influence over the inhabitants of the county.

3. In felony cases, the application must be filed not later than thirty days after arraignment. In misdemeanor cases, the application must be filed not later than ten days before the date set for trial.

4. A copy of the application and a notice of the time when it will be presented to the court shall be served on all parties.

5. The application shall set forth the reason or reasons for change of venue. It need not be verified and shall be signed by the defendant or his attorney.

6. The state may, within five days after the filing of the application for a change of venue, file a denial of the existence of the reason or reasons alleged in the application. Such denial need not be verified. If a denial is filed, the court shall hear evidence and determine the issues. If the issues are determined in favor of the defendant, or if the truth of the grounds alleged is within the knowledge of the court, or if no denial is filed, a change of

venue shall be ordered to some other county convenient to the parties and where the reason or reasons do not exist.

§ 545.473. Section 545.473 is an exception to Rule 32.03, which provides for a change of venue as a matter of right upon the timely filing of a written application by the defendant in counties with populations of 75,000 or fewer inhabitants. Rule 32.03; *State v. Gilley*, 785 S.W.2d 538, 539 (Mo. banc 1990). Under Rule 32.03, the defendant need not allege or prove any reason for the change. *Id.* The "Notwithstanding Missouri supreme court rule 32.03" language of section 545.473 reveals the General Assembly's intent to pass a law limited to the purpose of annulling or amending Rule 32.03. The rationale for the Cole County change of venue statute is to prevent dangerous inmates from taking "excursions" about the state on changes of venue. *Gilley*, 785 S.W.2d at 539. The Missouri Supreme Court explained the rationale behind the Cole County venue statute in *State v. Gilley*, 785 S.W.2d 538, 540 (Mo. banc 1990):

To permit a change of venue for all who request it in Cole County would result in costly waste of time, as well as possibly insufficient facilities and law enforcement officers to protect inmates and witnesses during trial in other counties. Further, many trials include prison inmates and officials as witnesses, resulting in additional costs to the state as a result of employees being sent with inmates for security purposes and employees being called to testify as witnesses.

The Cole County statute, therefore, preempts Rule 32.03.

■ Section 545.473 also preempts section 545.490, the "for cause" change of venue statute. A venue statute is subject to the general rule that a specific statute prevails over a general statute. *State ex rel. City of Springfield v. Barker*, 755 S.W.2d 731 (Mo. App.1988). Section 545.490 provides that in counties of less than 75,000 inhabitants, a petitioner may obtain a change of venue for cause, as a matter of course, if the petition is supported by the affidavits of five or more credible disinterested citizens residing in different neighborhoods in the county. Section

545.473, however, establishes a different procedure for cases filed in counties with department of corrections and human resources facilities such as Cole County. To obtain a change of venue, a petitioner must show either that the inhabitants of the county are prejudiced against him or that the state has an undue influence over the inhabitants. § 545.473.2. As discussed above, the General Assembly intended that section 545.473 apply to all cases in counties with department of corrections and human resources facilities, even if the county has a population of less than 75,000 inhabitants. To apply both statutes to Cole County would negate the purpose of section 545.473, to prevent inmates from traveling throughout the state for trials if they could satisfy the "for cause" requirements of section 545.490. Because section 545.473 is specific to Cole County and section 545.490 is the general "for cause" venue statute, section 545.473 prevails over section 545.490.

■ Finally, whether section 545.473 preempts Rule 32.04, the "for cause" Supreme Court rule, need not be determined. Both section 545.473 and Rule 32.04 require the same showing to obtain a change of venue: that the inhabitants of the county are prejudiced against the defendant or that the state has an undue influence over the inhabitants. § 545.473 and Rule 32.04 (although the time limits are different for each venue rule). Unlike section 545.490, which makes the duty to grant a change of venue mandatory in counties of less than 75,000 inhabitants if the motion is supported by five affidavits of disinterested citizens, whether a defendant makes the required showing under section 545.473 or Rule 32.04 is discretionary with the trial court. In this case, the trial court found that Ms. Kenney failed to show that the inhabitants of Cole County were prejudiced against her or that the state had an undue influence over the inhabitants. The eight affidavits submitted with Ms. Kenney's motion were not dispositive of the "prejudice" issue under section 545.473 (or Rule 32.04), and the trial court did not abuse its discretion in denying her change of venue motion. Point one is denied.

## II. THE COMPLAINT AND THE INFORMATION

In points two and three, Ms. Kenney claims that the trial court never acquired jurisdiction of the charges against her because of defects in the original complaint and in the information. The complaint, filed April 7, 1997, stated:

Comes now, Prosecuting Attorney, Richard G. Callahan, being duly sworn according to Law, deposes and states upon information and belief, that the above-named defendant committed the following crimes, to-wit:

CHARGES:

COUNT I: ASSAULT 1 $^{ST}$ DEGREE (CLASS B FELONY) 565.050 RSMo.

COUNT II: ASSAULT 1 $^{ST}$ DEGREE (CLASS B FELONY) 565.050 RSMo.

DATE OF OFFENSE: 11/20/96 PLACE: 1110 OAK STREET, J.C. MO

The complaint then stated the facts that form the basis for the belief, and William Tackett, an assistant prosecuting attorney, signed the complaint. Ms. Kenney was bound over on April 22, 1997, without a preliminary hearing on either count.

A two-count information was then filed on May 9, 1997. It provided:

### INFORMATION

### COUNT I

The Assistant Prosecuting Attorney of the County of Cole, State of Missouri, charges that the defendant, Sandra Marie Kenney, acting with others, in violation of Section 565.050, RSMo, committed the class A felony of assault in the first degree, punishable upon conviction under Section 558.011, RSMo, in that on or about November 20, 1996, in the County of Cole, State of Missouri, the defendant, acting with others, knowingly caused serious physical injury to Naomi Baum by hitting her and injecting an unknown fluid into her body, believed to be ethylene glycol and cocaine.

## COUNT II

The Assistant Prosecuting Attorney of the County of Cole, State of Missouri, charges that the defendant, Sandra Marie Kenney, acting with others, in violation of Section 565.050, RSMo, committed the class B felony of assault in the first degree, punishable upon conviction under Section 558.011, RSMo, in that on or about November 20, 1996, in the County of Cole, State of Missouri, the defendant, acting with others, attempted to kill or cause serious physical injury to an unborn five month old child by hitting Naomi Baum and injecting an unknown fluid believed to be ethylene glycol and cocaine into the body of Naomi Baum.

Ms. Kenney was arraigned on May 12, 1997, and pleaded not guilty to both charges. The two-day trial commenced on June 11, 1997.

■ The trial court's jurisdiction is not dependent upon the sufficiency of the complaint and the information. *State v. Simpson*, 846 S.W.2d 724 (Mo. banc 1993); *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992). The Missouri Supreme Court recently addressed and rejected the contention that a defective information deprives the trial court of jurisdiction. *Simpson*, 846 S.W.2d at 727. It stated,

> Subject matter jurisdiction of the circuit court and the sufficiency of the information or indictment are two distinct concepts. The blending of those concepts serves only to confuse the issue to be determined. Circuit courts obviously have jurisdiction to try crimes.

*Id.* (quoting *State v. Parkhurst*, 845 S.W.2d at 35). Thus, even if the complaint or the information were defective in this case, the trial court had authority to proceed on the complaint and the information. *See Simpson*, 846 S.W.2d at 727. The question, therefore, becomes whether the alleged defectiveness requires reversal. *Id.*

■ On appeal, Ms. Kenney alleges two defects in the complaint and the information. First, she claims that the original complaint did not comply with Rule 22.02 because it was sworn by the county prosecuting attorney but signed by the assistant prosecuting attorney. Rule 22.02(e) provides that a felony complaint must be verified by oath or affirmation of the complainant or signed by a prosecuting attorney on information and belief. Ms. Kenney also contends that the information, filed after she was bound over without a preliminary hearing, charged offenses completely different from those charged in the original complaint. Specifically, she claims that the information charged higher offenses than those charged in the original complaint in that the charge in Count I was changed from a Class B felony to a Class A felony and "physical injury" was changed to "serious physical injury." She contends, therefore, that she was deprived of a preliminary hearing on the charges in the information in violation of section 544.250. Section 544.250 provides that "[n]o prosecuting or circuit attorney in this state shall file any information charging any person or persons with any felony, until such person or persons shall first have been accorded the right of a preliminary examination before some associate circuit judge in the county where the offense is alleged to have been committed in accordance with this chapter."

■ Ms. Kenney, however, waived these objections to the complaint and the information. Rule 24.04(b)(2) governs the defenses and objections that must be raised before trial. It states:

> Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

Rule 24.04(b)(2). Deficiencies in an information such as a failure to sign and verify the information are only formal defects and are

waived if the defendant did not raise the question by motion to quash prior to trial. *State v. Law,* 847 S.W.2d 134, 137 (Mo.App. 1993). Likewise, a defendant waives her right to object to the absence of a preliminary hearing when the defendant proceeds to trial without an objection. *Simpson,* 846 S.W.2d at 728.

In this case, Ms. Kenney failed to object to the alleged deficiencies in the complaint and the information prior to trial. Neither the docket sheet nor the record on appeal indicates that Ms. Kenney filed a motion to quash the complaint for the alleged signature defect. Additionally, she did not object to the lack of a preliminary hearing on the information and did not request a continuance or move to dismiss the information prior to going to trial on the information. Ms. Kenney, therefore, waived any objections to the sufficiency of the complaint or the information.

■■■■ A court, however, may grant relief from waiver for good cause shown under Rule 24.04(b)(2). Rule 24.04(b)(2); *Simpson,* 846 S.W.2d at 728. When the issue of insufficiency of the indictment or information is raised for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. *Parkhurst,* 845 S.W.2d at 35. In either case, a defendant will not be entitled to relief based on a post-verdict claim that the indictment or information was insufficient unless the defendant demonstrates actual prejudice. *Id.*

■■■■ Ms. Kenney failed to demonstrate actual prejudice from the alleged defects in the complaint and the information. First, the alleged signature defect was merely a formal defect. *Law,* 847 S.W.2d at 137. The purpose of the verification of a complaint or an information is to "afford the defendant a guaranty of the good faith of the prosecution, and to prevent a careless and reckless prosecution of a citizen." *Id.* (quoting *State v. Brown,* 181 Mo. 192, 79 S.W. 1111, 1121

(1904)). Verification does not confer jurisdiction on the criminal courts to try felony cases or to define what constitutes a sufficient charge. *State v. Rhodes,* 591 S.W.2d 174, 176 (Mo.App.1979)(citing *Brown,* 79 S.W. at 1121). The lack of a proper verification or signature, therefore, does not affect the substantive rights of a defendant, and Ms. Kenney has failed to demonstrate actual prejudice from the alleged signature defect.

■■■■ Additionally, Ms. Kenney failed to demonstrate prejudice from the differences between the charges in the complaint and the information. First degree assault is a Class B felony unless in the course thereof the actor inflicts serious physical injury on the victim. § 565.050. In such a case, it is a Class A felony. *Id.* Although the quality of evidence required to prove "serious physical injury" is more demanding than the quality of evidence required to prove "physical injury," any evidence available to a defendant regarding the nature and extent of the victim's injuries is equally probative. *State v. Mace,* 665 S.W.2d 655, 660 (Mo.App.1984). Likewise, the classification of first degree assault as a Class A felony rather than a Class B felony only enhances the punishment; it does not change the charged offense of assault in the first degree. *State v. Adams,* 741 S.W.2d 781, 785 (Mo.App.1987). The differences between the complaint and the information in this case, therefore, did not prejudice Ms. Kenney. The information adequately informed Ms. Kenney of the charges against her and sufficiently enabled her to prepare a defense and plead former jeopardy in the event of acquittal. Points two and three are denied.

### III. UNBORN CHILD IS A PERSON FOR PURPOSES OF § 565.050

■■■ In her next point on appeal, Ms. Kenney claims that the trial court erred in denying her post-verdict motion for judgment of acquittal on Count II, the assault of Ms. Baum's unborn child. She argues that an unborn child is not a person for the purposes of section 565.050.

Section 565.050 states, "A person commits the crime of assault in the first degree if

he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." The question in this case, therefore, is whether an unborn child is a "person" for the purposes of the first degree assault statute.

Section 1.205, enacted by the Missouri General Assembly in 1986, provides:

1. The general assembly of this state finds that:

(1) The life of each human being begins at conception;

(2) Unborn children have protectable interests in life, health, and well-being;

(3) The natural parents of unborn children have protectable interests in the life, health, and well-being of their unborn child.

2. Effective January 1, 1988, the laws of this state shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state, subject only to the Constitution of the United States, and decisional interpretations thereof by the United States Supreme Court and specific provisions to the contrary in the statutes and constitution of this state.

3. As used in this section, the term "unborn children" or "unborn child" shall include all unborn child or children or the offspring of human beings from the moment of conception until birth at every stage of biological development.

4. Nothing in this section shall be interpreted as creating a cause of action against a woman for indirectly harming her unborn child by failing to properly care for herself or by failing to follow any particular program of prenatal care.

With the enactment of section 1.205.2, the General Assembly set out a rule of interpretation that the time of conception, and not viability, determines when the legally protectable rights, privileges, and immunities of an unborn child are deemed to exist. *Connor v. Monkem Co., Inc.*, 898 S.W.2d 89, 92 (Mo. banc 1995). Furthermore, section 1.205(2) sets out the General Assembly's in-

tention that Missouri Courts should read *all* Missouri statutes in *pari materia* with this section. *Id.* Thus, applying section 1.205, an unborn child is a person for the purposes of the first degree assault statute. *See also Connor v. Monkem Co., Inc.*, 898 S.W.2d 89 (Mo. banc 1995)(an unborn child is a person for whose death a parent may state a claim under the wrongful death statute, section 537.080); *State v. Knapp*, 843 S.W.2d 345 (Mo. banc 1992)(an unborn child is person for the purposes of the involuntary manslaughter statute, section 565.024); *State v. Holcomb*, 956 S.W.2d 286, 290 (Mo.App.1997)(an unborn child is a person for the purposes of the first degree murder statute, section 565.020). The trial court did not err in denying Ms. Kenney's post-verdict motion for judgment of acquittal on Count II, the assault of Ms. Baum's unborn child. Point four is denied.

## IV. SUFFICIENCY OF THE EVIDENCE

In points five and six, Ms. Kenney claims that the trial court erred in denying her motion for judgment of acquittal or for new trial on both counts. She contends that insufficient evidence was presented to prove her guilt beyond a reasonable doubt of two counts of first degree assault. Specifically, she claims that the evidence was insufficient to prove that Ms. Baum was caused serious physical injury or that the attackers had the present ability to kill or cause serious physical injury to the unborn baby.

Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Smith*, 944 S.W.2d 901, 916 (Mo. banc 1997); *cert. denied*, —— U.S. ——, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997). The evidence and all reasonable inferences drawn from the evidence are viewed in the light most favorable to the jury's verdict, and any contrary evidence and inferences are disregarded. *Id.* The reliability, credibility, and weight of the witnesses' testimony are for the jury to determine. *State v. Idlebird*, 896 S.W.2d 656, 661–662 (Mo.App.1995).

■ A person commits the crime of first degree assault if she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person. § 565.050.1. Assault in the first degree is a Class B felony unless in the course thereof the actor inflicts serious physical injury on the victim. In such case, the first degree assault is a Class A felony. § 565.050.2. Ms. Kenney was convicted of Class A first degree assault against Ms. Baum for acting together with Richard Brinkman and Mikel Brice to knowingly cause serious physical injury to her by kicking and hitting her and by injecting her with ethylene glycol and cocaine. Ms. Kenney argues on appeal that the evidence was insufficient to prove that Ms. Baum was caused serious physical injury. Serious physical injury is "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6). "At a minimum, substantial risk of death suggests a condition of endangerment with cause for apprehension of life-threatening consequences." *State v. Johnson*, 770 S.W.2d 263, 266 (Mo.App.1989). Obviously, the survival of the victim demonstrates that the injury was not one predictably certain to result in death. *Id.* The question, therefore, is whether the injuries inflicted, viewed objectively, are of a degree of severity to reasonably prompt a concern for the victim's survival. *Id.*

In this case, evidence was presented that Mr. Brinkman and Mr. Brice hit and kicked Ms. Baum in the face and in the stomach until she lost consciousness. Ms. Baum's emergency room doctor testified that she suffered multiple bruises and abrasions on her face, around her eyes, on the side of her head, and on her neck and upper chest and a broken nose consistent with being beaten or kicked with blunt objects like hands, fists, or shoes. Although fists can be a force likely to produce death or great bodily harm, *State v. Wheadon*, 779 S.W.2d 708, 711 (Mo.App. 1989), the doctor stated that the traumatic injuries sustained by Ms. Baum were not life threatening.

The evidence also revealed that the two men injected Ms. Baum in the arm and in the stomach with cocaine and antifreeze. The physician confirmed that Ms. Baum had puncture wounds and bruising on her abdomen, belly, navel, and umbilicus consistent with wounds caused by a hypodermic needle, and a urine drug screen showed cocaine in Ms. Baum's system. No evidence of the toxicity of the substances, however, was presented. The physician witness stated that cocaine could be life threatening, but he explained that the level at which the drug became lethal varied from person to person. Similarly, although the physician stated that ethylene glycol, a component of antifreeze, was potentially lethal if orally ingested, he could not state the toxicity of the substance when injected in the bloodstream. No evidence of the toxicity of the substances or the amount needed to become lethal was offered. Without such evidence, the evidence of injection with cocaine and antifreeze was insufficient for a reasonable jury to find that Ms. Baum sustained serious injuries that could have had life threatening consequences. The conviction for Class A felony first degree assault must, therefore, be reversed.

■ The evidence, however, did support a conviction of Class B felony assault in the first degree. "Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993). All elements of Class B felony first degree assault were established by the evidence and were necessarily found by the jury in arriving at its verdict. *State v. Dooley*, 919 S.W.2d 539, 542 (Mo.App.1995); *State v. Nguyen*, 880 S.W.2d 627, 636 (Mo. App.1994). Because sufficient evidence was presented to support a conviction of the lesser included offence of Class B felony assault in the first degree, the case is remanded to the trial court for entry of judgment of conviction on Count I and sentencing on the Class B felony.

Ms. Kenney was also convicted of Class B first degree assault against Ms. Baum's unborn child for acting together with Mr. Brinkman and Mr. Brice to attempt to kill or cause serious physical injury to the unborn child. She claims the evidence was insufficient to prove that the attackers had the present ability to kill or cause serious physical injury to the unborn baby. The offense of first degree assault is defined as the commission of assault or as attempt to commit assault. § 565.050. As such, the term "attempt" bears the common law meaning. *State v. Reyes*, 862 S.W.2d 377, 386 (Mo.App. 1993). A generally accepted common law definition of "attempt" is "an intent to do a particular criminal thing, with an act towards it falling short of the thing intended." *Id.* at 382 (quoting *State v. Thomas*, 438 S.W.2d 441, 446 (Mo.1969)). There must be an apparent ability to commit the crime. *Id.* at 383. While Ms. Kenney does not dispute that the attackers intended to kill or seriously injure the unborn child, she claims that no evidence was presented that proved they had the apparent ability to kill or injure the child. Ms. Kenney's claim is incorrect.

The evidence revealed that Mr. Brinkman and Mr. Brice repeatedly hit and kicked Ms. Baum, who was five months pregnant, in the abdomen. While these resultant injuries were not life threatening to Ms. Baum according to her treating doctor, a reasonable jury could have concluded that the blows to her abdomen had the potential to kill or seriously injure the unborn child. The natural consequence of such action is to cause serious physical injury to the unborn child. *See State v. Moore*, 882 S.W.2d 253, 258 (Mo.App.1994); *cert. denied*, 513 U.S. 1130, 115 S.Ct. 942, 130 L.Ed.2d 886 (1995)(the natural consequence of repeatedly kicking the victim in the head while he was on the floor bleeding is to cause serious physical injury; the evidence was sufficient, therefore, for a jury to find that the defendant attempted to kill or cause serious physical injury). Although there was no evidence that the unborn baby suffered serious physical injury, sufficient evidence was presented that the attackers at least "attempted" to cause serious physical injury. *See State v. White*, 798 S.W.2d 694, 697 (Mo. banc 1990)(that the victim suffered no serious physical injury is relevant only in deciding punishment). Sufficient evidence was, therefore, presented from which a reasonable juror could find the Ms. Kenney guilty beyond a reasonable doubt of first degree assault against Ms. Baum and her unborn baby.

## V. MISCELLANEOUS ALLEGATIONS OF ERROR

In her final point on appeal, Ms. Kenney raises a number of alleged errors. She claims that the trial court erred in denying her motion for a new trial because (1) she was denied a fully qualified impartial jury as a result of the State's failure to disclose the name of a State witness, Travis Wood, to the venire panel during voir dire; (2) the State improperly referred to the dispositions of Mr. Brinkman's and Ms. Lene's cases; (3) leading questions were used and some of the witnesses allegedly used "scripts;" (4) evidence of the victim being sodomized with a banana during the attack was admitted; (5) the trial court reread a corrected version of Instruction 7, the verdict director on Count II, to the jury; (6) the State "played to the camera" and made improper statements during closing argument; and (7) evidence of other crimes was admitted. Ms. Kenney, however, failed to raise all but two of these alleged errors in her motion for a new trial and, thus, failed to preserve them for appellate review.

An allegation of error must be included in a motion for new trial to be preserved for appellate review. Rule 29.11(d); *State v. Williams*, 951 S.W.2d 332, 338 (Mo.App.1997). These claims are reviewable, if at all, only for plain error. Rule 30.20; *State v. Clemons*, 946 S.W.2d 206, 224 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. *Clemons*, 946 S.W.2d at 224. An appellant must demonstrate that manifest injustice or miscarriage of justice will occur if the error is not corrected. *Id.* None of Ms. Kenney's unpreserved claims raise a substantial ground for finding plain

error, and this court declines to subject those claims to its discretionary review under Rule 30.20. *See Id.*

The two claims that were preserved for review, the use of leading questions and the admission of the evidence that Ms. Baum was sodomized with a banana, were ultimately abandoned. Ms. Kenney failed to expound on or develop an argument in her brief on these points or to cite authority in support of the points. Where an appellant's point is not developed in the argument portion of her brief, it is deemed abandoned. *State v. Timmons,* 956 S.W.2d 277, 283 (Mo. App.1997); *State v. Khoshaba,* 878 S.W.2d 472, 475 (Mo.App.1994). Likewise, where an appellant does not cite authority to support her claim, it will not be addressed. *Khoshaba,* 878 S.W.2d at 475. Point seven is, therefore, denied.

The judgment of conviction on Count II is affirmed. The judgment of conviction on Count I is reversed, and the case is remanded to the trial court for entry of judgment of conviction for Class B first degree assault and sentencing on Count I.

All concur.