In re the MARRIAGE OF Holly
ULMANIS and Eugene
Ulmanis.

Holly Ulmanis, Respondent,

v.

Eugene Ulmanis, Appellant.

No. 23014.

Missouri Court of Appeals,
Southern District,
Division One.

June 14, 2000.

Motion for Rehearing and Transfer to Supreme Court Denied July 6, 2000.

Application for Transfer Denied
Aug. 29, 2000.

---

Charles B. Cowherd, Kristen S. Beerly, Springfield, for appellant.

Todd F. Thorn, West Plains, for respondent.

CROW, Presiding Judge.

Eugene Ulmanis asked the trial court to terminate his obligation to pay maintenance to his ex-wife, Holly Ulmanis, and to reduce the child support he must pay her.

The trial court denied the first request but granted the second.

Eugene [1] appeals, maintaining the trial court wrongly denied the first request and should have granted a greater reduction in child support.

The parties' marriage was dissolved November 22, 1996.

Eight days earlier, on November 14, 1996, the parties signed a separation agreement ("the Agreement"). Part IV of the Agreement reads:

"The parties agree, after examining all relevant factors, including the situation of the parties at the present time, that [Eugene] shall pay maintenance to [Holly] in the sum of $2000.00 per month. The payments shall be made in advance, commencing November 1, 1996, and shall be made on the first day of each month thereafter. This maintenance shall continue until terminated by action of law, remarriage of [Holly] or death of [Eugene]. This maintenance shall be NON–MODIFIABLE. *EACH PARTY EXPRESSLY WAIVES THE RIGHT TO APPLY TO ANY COURT FOR A CHANGE IN THE AMOUNT OF THE MAINTENANCE HEREIN.*"

The dissolution decree provides, *inter alia:*

"[Eugene] shall pay the sum of $2000.00 per month to [Holly] as and for maintenance, said maintenance to be NON–MODIFIABLE, beginning on November 1, 1996, and due and payable on the first day of each month thereafter. . . .

[The Agreement] DATED NOVEMBER 14, 1996, admitted into evidence and attached hereto, is approved and is incorporated into and made a part of this Decree, and the terms thereof are made the orders of this Court."

On August 13, 1998, Eugene filed a three-count motion in the trial court.[2] Count I pertained to maintenance. It alleged Eugene "is not financially able to pay any sum of maintenance to [Holly] due to his present financial circumstances." Count I further pled that had the trial court been fully informed of all relevant factors pertaining to maintenance at the time it entered the dissolution decree, the court "would have found the maintenance provisions contained in the Agreement to be unconscionable." Count I prayed the trial court to terminate Eugene's obligation to pay maintenance to Holly "retroactive to the filing of this Motion."

The trial court, after hearing evidence, found, *inter alia:*

"[Eugene's] current gross monthly income is $3,411.37 per month (including health insurance premiums paid by his corporation of $146.79 per month) and his current reasonable monthly expenses are $4,222.01 per month, net of child support and maintenance.

At the time of the entry of the decree dissolving the marriage . . . [Eugene's] income was represented to the Court to be approximately $9,100.00 according to the Settlement Agreement and Child Support form[.]

. . . .

1. For brevity and clarity, this opinion refers to the parties by their respective forenames. No disrespect is intended.

2. Eugene filed his motion after Holly filed a motion seeking, *inter alia,* enforcement of the maintenance and child support awards. Holly's motion is not germane to the issues in this appeal.

The Court is of the opinion based on all the evidence presented, under the present status of the law, that the maintenance is not modifiable by this Court."

Eugene's first point relied on reads:

"The trial court erred in denying Gene's motion to terminate maintenance, because:

(1) under Missouri Supreme Court Rule 74.06(B)(5), it is 'no longer equitable that the judgment remain in force' in that the trial court found that, due to circumstances beyond his control, Gene's current monthly gross income is $3,411.37—nearly $6,000 less than the amount that was represented to the trial court when it entered the original decree—and Gene's current reasonable monthly expenses are $4,222.01, rendering him incapable of paying the $2,000 per month in maintenance awarded by the original decree; and

(2) under § 452.370 RSMO., the maintenance award should be terminated on the grounds that the award exceeds Gene's ability to pay given the trial court's finding that Gene's monthly expenses, absent maintenance and child support, exceed his monthly income; and

(3) the trial court had the authority to set aside the decree or terminate the maintenance award in that the separation agreement adopted in the original decree provided that maintenance, although non-modifiable, would continue 'until terminated by action of law.'"

This court begins its assessment of the above point by noting it charges the trial court with error in refusing to *terminate* the maintenance award. The point does not aver the trial court erred in refusing to *reduce* the award.

▮▮▮ The questions for decision on appeal are those stated in the points relied

on; a question not there presented will be considered abandoned on appeal and no longer an issue in the case. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405[3] (Mo.1964); *Schmidt v. Warner*, 955 S.W.2d 577, 583[5] (Mo.App. S.D.1997). Consequently, this court, in addressing Eugene's first point, shall decide only whether the trial court, for the reasons enumerated in the point, erred in failing to *terminate* the maintenance award. Whether the trial court should have *reduced* the award is not excogitated.

Paragraph 1 of Eugene's first point is premised on the assumption that Rule 74.06(b)(5), Missouri Rules of Civil Procedure (2000), authorized the trial court to terminate maintenance.

Rule 74.06 has remained unchanged since January 1, 1988. Paragraph "(b)" thereof reads, in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party ... from a final judgment or order for the following reasons: ... (5) ... it is no longer equitable that the judgment remain in force."

As henceforth explained, this court holds Rule 74.06(b)(5) conferred no authority on the trial court to terminate Eugene's duty to pay Holly maintenance.

Section 452.370.1, RSMo Cum.Supp. 1998, reads, in pertinent part:

"Except as otherwise provided in subsection 6 of section 452.325,[3] the provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

Termination of maintenance was treated as a modification of maintenance in *McDaniel v. McDaniel*, 982 S.W.2d 729, 733 (Mo.App. E.D.1998); *Myers v. Myers*, 950 S.W.2d 937, 938 (Mo.App. S.D.1997);

---

**3.** Subsection 6 of § 452.325, RSMo 1994, reads:

"Except for terms concerning the support, custody or visitation of children, the

decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides."

*Beeler v. Beeler,* 820 S.W.2d 657, 660–61 (Mo.App. W.D.1991). In *Beeler,* the Western District of this Court, citing § 452.370, affirmed a judgment terminating maintenance. The opinion said: "A [maintenance award in a] decree of dissolution can be modified only if the changes are so continuing and so substantial as to make the original terms of the decree unreasonable." *Id.* at 661.

An alert reader will recognize a difference between the requirement for obtaining relief from a judgment under Rule 74.06(b)(5) and the requirement for obtaining modification (or termination) of a maintenance award under § 452.370.1. The rule requires a showing that it is no longer equitable that the judgment remain in force, while the statute requires a showing that because of a substantial and continuing change in circumstances, the award is unreasonable. Obviously, the rule imposes a different test than the statute.

Mo. Const., Art. V, § 5 (1945, amended 1976), authorizes the Supreme Court of Missouri to "establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law." However, the same constitutional provision declares: "The rules shall not change substantive rights[.]"

■ A rule that would affect substantive matters would be beyond the rule-making authority of the Supreme Court. *Curtis v. Tozer,* 374 S.W.2d 557, 576[18] (Mo.App. 1964). The Supreme Court cannot change substantive rights. *State v. Kenney,* 973 S.W.2d 536, 540[2] (Mo.App. W.D.1998).[4]

The General Assembly, in enacting § 452.370.1, established the substantive requirement for obtaining modification (or termination) of a maintenance award, i.e., a showing of changed circumstances so substantial and continuing as to make the existing award unreasonable.

■ This court is convinced that the Supreme Court of Missouri did not intend Rule 74.06(b)(5) to apply to maintenance awards in dissolution decrees, as the test for obtaining relief from a judgment under the rule is different than the test for obtaining modification (or termination) of a maintenance award under § 452.370.1. To hold otherwise would mean the Supreme Court, through Rule 74.06(b)(5), intended to change the substantive requirement in § 452.370.1 for obtaining termination of a maintenance award. This court rejects that notion.

Furthermore, Rule 74.06(b) does not appear to authorize relief from *part* of a judgment.

This court construed Rule 74.06 that way in *Settles v. Settles,* 913 S.W.2d 101 (Mo.App. S.D.1995). This court said: "Rule 74.06 makes no provision for the amendment or modification of a judgment, *or for relief from part of a judgment.*" *Id.* at 103[7] (emphasis added). *Accord: Spicuzza v. Spicuzza,* 886 S.W.2d 660, 661[3] (Mo.App. E.D.1994).

Evidently mindful of those holdings, Eugene's lawyer—as this court understood his oral argument—maintains Rule 74.06(b)(5) empowered the trial court to set aside the entire decree, then immediately reinstate all of it except the maintenance and child support provisions. Eugene's lawyer acknowledged he could find no case supporting that theory.

This court eschews that construction of Rule 74.06(b)(5). Such an interpretation would allow a trial court, by such machinations, to grant relief from part of a judgment, contrary to *Settles* and *Spicuzza.*

For the foregoing reasons, this court finds no merit in paragraph 1 of Eugene's first point.

Paragraph 2 of the first point proclaims the maintenance award should be

4. A holding in *Kenney* on an unrelated point was overruled in *State v. Withrow,* 8 S.W.3d 75, 80 n. 5 (Mo. banc 1999).

terminated under § 452.370 because the award exceeds Eugene's ability to pay.

As reported earlier, the trial court found Eugene's current monthly income is $3,411.37 and his current reasonable monthly expenses are $4,222.01. The trial court also found Holly's current monthly income (excluding maintenance and child support) is $1,400 and her current monthly expenses for herself and the parties' two minor children are $2,634.25. As this court comprehends the parties' briefs, neither litigant challenges those findings.

In the Agreement, Eugene promised to pay Holly child support of $750 per month per child. The dissolution decree set child support at that amount.

As discussed more fully *infra*, the trial court, in the judgment appealed from here, reduced Eugene's monthly child support obligation to $585 in toto, retroactive to August 1, 1998. That saves Eugene $915 per month.

After the child support reduction, Holly's monthly income ($1,400) plus monthly child support ($585) totals $1,985 (assuming the child support is paid). That is $649.25 less than her monthly expenses for herself and the children ($2,634.25). Consequently, had the trial court terminated the maintenance award, Holly's total income would have been insufficient to meet her and the children's undisputed needs.

■ Eugene, as the moving party, had the burden of proving changed circumstances so substantial and continuing as to make the maintenance award unreasonable. *Theilen v. Theilen*, 911 S.W.2d 317, 318[2] (Mo.App. W.D.1995); *Butts v. Butts*, 906 S.W.2d 859, 861–62[8] (Mo.App. S.D. 1995).

Emphasizing that Eugene's first point assigns no error in the trial court's refusal to *reduce* the maintenance award, but predicates error solely on the trial court's refusal to *terminate* the award, this court cannot convict the trial court of that alleged error.

This court infers the trial court based its refusal to terminate maintenance on a finding (quoted earlier in this opinion) that "the maintenance is not modifiable." It is unnecessary for this court to decide whether that conclusion was correct. That is because an appellate court, in an appeal from a judge-tried case, is concerned with only the correctness of the result, not the route taken to reach it. *Dickinson v. Ronwin*, 935 S.W.2d 358, 365[13] (Mo.App. S.D.1996). Accordingly, if a trial court's ruling is correct, it will not be disturbed on appeal because the court may have given a wrong or insufficient reason for it. *State ex rel. Heiserman v. Heiserman*, 941 S.W.2d 768, 770[4] (Mo.App. S.D.1997).

■ Because terminating maintenance would have left Holly with insufficient income to meet her and the children's undisputed needs, the trial court did not err in refusing to terminate maintenance, irrespective of the reason. Paragraph 2 of Eugene's first point is meritless.

Paragraph 3 of Eugene's first point avers the trial court had authority to set aside the dissolution decree or terminate maintenance because the Agreement provided that maintenance, although nonmodifiable, would continue "until terminated by action of law."

Because this court has already held Rule 74.06(b)(5) did not authorize the trial court to "relieve" Eugene from the maintenance award and the trial court did not err under § 452.370.1 in refusing to *terminate* the award, this court need not—and does not—decide whether the phrase "until terminated by action of law" in the Agreement authorized the trial court to terminate maintenance.

Finding no reason in Eugene's first point to disturb the trial court's denial of Eugene's prayer to terminate maintenance, this court leaves that ruling intact.

The second count in Eugene's motion of August 13, 1998, prayed the trial court to reduce the child support awarded Holly in the dissolution decree. As noted earlier,

the trial court reduced the award from $750 per month per child to $585 per month in toto.

Eugene's second point:

"The trial court erred in failing to reduce child support to an amount less than $585.00 per month because the trial court failed to discharge its responsibility to determine the appropriate amount of child support to be paid by Gene to Holly in that the trial court failed to determine the correct amount of child support due by completing its own Form 14 calculation or finding the facts necessary for that calculation, thereby depriving the appellate court of a basis for review."

The judgment appealed from recites the trial court, in calculating child support at $585 per month, "adopts Respondent's[5] Exhibit 'A' attached hereto."

No Exhibit A is appended to the copy of the judgment in the record on appeal. The parties, in their respective briefs, agree no such exhibit was attached to the judgment entered by the trial court.

Citing *Anderson v. Anderson,* 861 S.W.2d 796, 801–02 (Mo.App. S.D.1993) and other cases, Eugene asserts this court "has consistently held that the failure of a trial court to prepare a Form 14 calculation, or to make findings necessary for its calculation, is grounds for reversal."

Holly responds that a trial court's failure to attach a Form 14 to its judgment is not reversible error if the record clearly shows how the court calculated child support. *See: Cyr v. Bodenhausen,* 946 S.W.2d 288, 290[4] (Mo.App. W.D.1997). Holly maintains the record meets that requirement.

Holly emphasizes that the trial court found Eugene's monthly gross income is $3,411.37 and her monthly gross income is $1,400. According to Holly, inserting those incomes on the version of Missouri

Civil Procedure Form No. 14 that took effect October 1, 1998, results in a presumed child support amount of $585 per month.

Appended to Eugene's brief as "Attachment C" is a Form 14 with a child support calculation based on the incomes in the preceding paragraph.[6] It shows a presumed child support amount of $585.

Eugene's brief points out that Holly's income on Attachment C does not include the $2,000 per month maintenance, and his income on Attachment C is not reduced by the $2,000 per month maintenance. With that caveat, Eugene—as shall appear *infra* in his third point—concedes the calculation on Attachment C is correct.

Because it is evident to this court that Attachment C shows how the trial court calculated child support at $585 per month, remanding this case to the trial court for preparation of another Form 14 would not aid appellate review. Whether the trial court should have set child support at a lesser amount—or eliminated it entirely—is addressed in this opinion's discussion of Eugene's third point. Given those circumstances, his second point presents no basis for reversal.

The third point:

"The trial court erred in setting child support at $585 per month and abused its discretion by failing to find that the Form 14 amount of child support was unjust and inappropriate because there was no evidence to support a finding that Gene had the ability to pay such support, or indeed any child support, in that the evidence showed, and the trial court made a factual finding that, Gene's monthly income was $2,810 per month *less* than his expenses (including maintenance due to Holly)."

Eugene's argument under this point begins with a reminder that the trial court

---

5. Eugene was Respondent in the trial court.

6. Eugene's reason for appending Attachment C to his brief appears *infra* in this opinion's discussion of his third point.

found his monthly income is $3,411.37 and his monthly expenses are $4,222.01. Obviously, his expenses exceed his income by $810.64. If he pays Holly $2,000 per month maintenance, his monthly shortfall becomes $2,810.64. Because of that, insists Eugene, the trial court should have eliminated "any child support obligation" by him to Holly. Eugene asserts: "The refusal of the trial court to deviate from Form 14 and to find that the application of Form 14 calculation is unjust and inappropriate is in fact an abuse of discretion."

Eugene recognizes an obstacle to his third point. It is explained in the next four paragraphs.

At the time the Agreement was signed and the dissolution decree entered, the version of Civil Procedure Form No. 14 that took effect September 1, 1996, was in force. According to Eugene, the maintenance to be paid by him to Holly was not to be included in her income on that version of Form 14, nor was the maintenance to be deducted from his income on that version of Form 14.

However, says Eugene, the current version of Form 14 [7] provides that the monthly gross income of the parent receiving child support (the amount on line 1) shall include court-ordered maintenance actually received. See: Missouri Court Rules, Vol. I (West Group 2000) pp. 403–04. Furthermore, adds Eugene, a parent paying court-ordered maintenance now receives (on line 2b) an adjustment to monthly gross income for "the amounts actually being paid toward current maintenance." See: Missouri Court Rules, Vol. I (West Group 2000) pp. 403, 407. Therefore, concludes Eugene: "[T]he current version Form 14 does contemplate the inclusion of maintenance in the income of the recipient parent

and the deduction of that payment from the income of the paying parent for purposes of Form 14 calculation." [8]

However, Eugene concedes the directions for use regarding line 2b provide:

"An adjustment is appropriate in a proceeding . . . to modify the [child] support payable under an existing order. However, the adjustment available to the moving parent in an action to . . . decrease the support payable under an existing order shall be the lesser of:

(1) the adjustment to which that parent was entitled when the existing order was entered, or

(2) the adjustment to which that parent is entitled as a result of an order entered after the existing order."

Eugene acknowledges the above proviso "prohibits the deduction of maintenance where, as here, the parent paying support is seeking to reduce support, and at the time of the original order the adjustment for maintenance was not permitted." Nonetheless, says Eugene, "[S]ince the entry of the [dissolution decree], there has been a change in policy with respect to the treatment of maintenance for purposes of the Form 14 calculation and [because] maintenance is such a significant issue in this case in that it represents such a significant portion of [my] monthly gross income, that factor should . . . be considered in this instance."

To illustrate the difference between child support using the version of Form 14 in force when the dissolution decree was entered and the current version of Form 14, Eugene appended to his brief a Form 14 showing each calculation. Attachment C, referred to in this opinion's discussion of Eugene's second point, is the calculation under the earlier version; Attachment D is

---

7. As reported earlier in this opinion, the current version of Civil Procedure Form No. 14 took effect October 1, 1998.

8. Eugene's conclusion is confirmed by the "Comment" in the directions for use regarding line 2b. It reads:

"If the court is establishing both child support and maintenance, the court shall first determine the appropriate amount of maintenance. This amount shall be included in the gross income (line 1) of the parent receiving the maintenance and as an adjustment (line 2b) of the parent paying the maintenance."

the calculation under the current version. As noted earlier in this opinion, the child support on Attachment C is $585 per month (the sum set by the trial court in the judgment appealed from); the child support on Attachment D is $113 per month.[9]

Eugene's third point ignores a crucial fact.

As we have seen, under the current version of Form 14, court-ordered maintenance is included in the monthly gross income of the parent *receiving* child support only to the extent of "maintenance actually received." Consistent with that treatment, court-ordered maintenance is deducted from the monthly gross income of the parent *paying* child support only "to the extent of the amounts actually being paid toward current maintenance."

As this court understands the record, the trial court found that as of April 5, 1999, Eugene owed Holly "back-due child support and maintenance" totaling $26,-890.41. This court deduces that $8,890.41 of the $26,890.41 represented child support and $18,000 represented maintenance.

Part of the arrearage was to be paid from funds deposited by Eugene in the registry of the trial court.[10] However, even after that payment, it was evident Eugene's maintenance obligation to Holly would be delinquent. Consequently, even if the current version of Form 14 were used in calculating child support, Holly's monthly gross income would not include "maintenance actually received," nor would Eugene be entitled to reduce his monthly gross income by deducting any amount "actually being paid toward current maintenance."

Furthermore, the reduction the trial court granted in child support will save Eugene $10,980 per year. That is a 26.1 percent reduction in the aggregate amount he promised to pay Holly for maintenance and child support in the Agreement.

At the time of the hearing on Eugene's motion, he was 46 years of age and in excellent health. He is a practicing veterinarian with a doctorate from Michigan State University. He conceded that in a financial statement to a bank in August 1997— nine months after the dissolution—he showed a net worth of $574,050. Furthermore, he recounted that in negotiations leading up to the Agreement, Holly originally wanted maintenance of $3,000 per month before acquiescing in $2,000 per month.

 Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's ruling, it cannot be said the court abused its discretion. *Anglim v. Missouri Pacific Railroad Co.,* 832 S.W.2d 298, 303[8] (Mo. banc 1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Applying that test to the circumstances enumerated in the preceding five paragraphs, this court holds the trial court did not abuse its discretion in rejecting Eugene's premise that $585 per month child support is unjust and inappropriate. Eugene's third point has no merit.

Judgment affirmed.[11]

PARRISH, J., files separate opinion concurring in part and concurring in result.

SHRUM, J., files separate opinion concurring in result.

---

9. Eugene's monthly gross income is shown on Attachment D as $3,265 instead of the $3,411.37 found by the trial court. Although Eugene's brief fails to explain the discrepancy, this court suspects Eugene arrived at $3,265 by deducting from $3,411.37 the monthly health insurance premium paid by his corporation: $146.79.

10. The source of those funds is immaterial to any issue in this appeal.

11. This opinion did not synopsize the third count in Eugene's motion of August 13, 1998, as it was unnecessary in addressing his three points on appeal.

JOHN E. PARRISH, Judge, concurring in part and concurring in result.

I concur in part and concur in the result. The only part of the principal opinion in which I do not concur outright is its discussion of paragraph three of Point I. The principal opinion states it is not necessary to decide whether the statement in the separation agreement that the non-modifiable maintenance that is awarded continues "until terminated by action of law" would authorize the trial court to terminate maintenance. The principal opinion declines to decide that issue. In my opinion the disposition made of paragraphs one and two of Point I amounts to a denial of paragraph three on the merits. I would so hold.

The trial court's authority to alter maintenance is established by § 452.370.1.[1] It permits modification under certain circumstances "[e]xcept as otherwise provided in subsection 6 of section 452.325." Section 452.325.6 states, "Except for terms concerning the support, custody or visitation of children, the decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides." The separation agreement in this case specifically states the maintenance provided by its terms is non-modifiable. As the principal opinion holds with respect to paragraph one of Point I, the maintenance in this case is not subject to modification under the terms of § 452.370.1.

In determining the alleged error set forth in paragraph two of Point I, the principal opinion holds § 452.370.1 is not subject to change by supreme court rule in that the statute establishes substantive rights. Thus, Rule 74.06(b)(5) does not permit a court to order a change in the contractual maintenance.

In my opinion, the phrase "until terminated by action of law" is surplusage and, in the context in which it appears, meaningless. I would deny paragraph three of Point I on the merits.

KENNETH W. SHRUM, Judge, concurring in result.

I concur in part and concur in the result. I write separately to express my disagreement with any notion that Rule 74.06(b)(5) is *never* available to relieve a party from a final dissolution decree simply because the decree includes a non-modifiable maintenance provision. As I view it, § 452.370.1, RSMo 1994, deals with substantive matters relating to modification (or termination) of a *modifiable* maintenance award, and nothing more. I depart from the principal opinion to the extent that it might be read as holding that the use of Rule 74.06(b)(5) to set aside a decree of dissolution which contains a *non-modifiable* maintenance provision changes the substantive requirements in § 452.370.1. How can this be correct since § 452.370.1 is not implicated when Rule 74.06(b)(5) is employed in an effort to *set aside* a decree containing a *non-modifiable* maintenance award?

Suppose, for example, the obligor of a non-modifiable maintenance award alleges and proves in a Rule 74.06(b)(5) proceeding that the obligor was comatose for several years, including the date he or she allegedly signed a separation agreement with a non-modifiable provision which was then incorporated into a dissolution decree? Suppose the obligor of a non-modifiable maintenance award alleges and proves in a Rule 74.06(b)(5) case that the obligor was under duress, at gun-point, when the obligor signed a separation agreement with a non-modifiable maintenance provision, and such agreement was then approved in a divorce decree. I simply cannot ascribe to the notion that to set aside such decrees via Rule 74.06(b)(5) would change the substantive requirements in § 452.370.1.

---

1. References to statutes are to RSMo 1994.

*Settles v. Settles,* 913 S.W.2d 101 (Mo. App.1995), and *Spicuzza v. Spicuzza,* 886 S.W.2d 660 (Mo.App.1994), through dicta, lend support to the view that Rule 74.06 can be used to set aside a final decree of dissolution with provisions which are otherwise non-modifiable. In *Settles* and *Spicuzza* the movants tried to obtain relief from non-modifiable marital property awards by using Rule 74.06. The *Spicuzza* court held: "Thus, although the trial court may not *modify* a property distribution, Rule 74.06 allows the decree of dissolution, as well as any division of property incorporated or included therein, to be set aside for one of the [Rule 74.06] reasons." 886 S.W.2d at 661. *Settles* quoted this language with approval. 913 S.W.2d at 103. As explained below, there is a basis here for affirming the trial court's decision without deciding whether Rule 74.06(b)(5) can be used to relieve a party from a final dissolution decree which contains a non-modifiable maintenance provision and I would resolve this case on that basis. However, when confronted directly with the question, I would view *Settles* and *Spicuzza* as authority for holding that Rule 74.06 would allow a decree of dissolution to be set aside for a Rule 74.06 reason although the decree contained a non-modifiable maintenance order.[1]

As the principal opinion notes, the movants' efforts in *Settles* and *Spicuzza* to use Rule 74.06 failed. However, the movants in those cases failed because they never asked the entire judgment to be set aside as contemplated by Rule 74.06; they only sought relief from part of the judgment, a right not available under Rule 74.06. As *Settles,* explains: "Rule 74.06 makes no provision for the amendment or modification of a judgment, or relief from part of a judgment." 913 S.W.2d at 103 (citing *Spicuzza,* 886 S.W.2d at 661).

The same situation attends here. Eugene's Rule 74.06 filing only alleged "some of the terms" of his dissolution decree were inequitable and sought to "set aside" only those terms of the decree which the "Court deems necessary to make the previous Judgment equitable." Rather than seeking the relief authorized by Rule 74.06, i.e., setting aside the entire decree of dissolution, Eugene only sought relief from part of the judgment. *Settles* and *Spicuzza* teach Rule 74.06 cannot be used in that manner. This was a valid basis for the trial court's refusal to grant Eugene relief and is my reason for concurring.

---

1. A separation agreement, including one which provides for non-modifiable maintenance, can only be approved as part of a dissolution decree if the agreement is found to be conscionable. §§ 452.325.2 and .6. This bespeaks a legislative intent requiring dissolution decrees to be just and equitable. In my view, using Rule 74.06(b)(5) to set aside a dissolution decree when "it is no longer equitable that the judgment remain in force" is in keeping with legislative intent.