

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| HEMANT GODARA, | ) | No. ED110648 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Case Number: 12SL-DR05166 |
| | ) | |
| GUARI SINGH | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondent. | ) | Filed: July 18, 2023 |

Kelly C. Broniec, C.J., Philip M. Hess, J., and James M. Dowd, J.

## OPINION

In this domestic relations matter, Hemant Godara appeals from the trial court's denial of his Rule 74.06(b) motion to set aside the parties' 2014 dissolution judgment and marital settlement agreement based on his claims that the judgment, which incorporated the settlement agreement, is void since neither he nor his ex-wife, Guari Singh, signed either document, and because the maintenance provision of the judgment is no longer equitable in its application. Godara also appeals the part of the judgment in which the trial court granted Singh's motion to determine the maintenance sums due and owing and ordered Godara to pay Singh $51,237.24 in maintenance owed from 2019 and 2020.

The judgment is not void since the terms governing maintenance set forth in the 2014 judgment and settlement agreement were agreed to by Godara in a December 2013 memorandum

of understanding that he signed and then affirmed in testimony before the court. Further, Godara is estopped from attacking the judgment after benefitting from it in various substantive ways and after complying with it for over five years. As to Godara's claim that the maintenance provision is no longer equitable, Godara's five-year delay in bringing the motion fails to satisfy Missouri Supreme Court Rule 74.06(c)'s requirement that such motions be filed within "a reasonable time." Finally, we affirm the trial court's judgment ordering Godara to pay maintenance owed from 2019 and 2020.

## Background

On August 2, 2012, Godara filed his petition for dissolution. Respondent Singh filed her answer and counter-petition for dissolution in which she pleaded that the parties had executed a postnuptial agreement which fixed Godara's maintenance obligation. On March 29, 2013, Godara asked the court to find the postnuptial agreement invalid, void, and unenforceable. After a hearing, the court denied Godara's motion.

On July 15, 2013, Singh moved to enforce the postnuptial agreement. The parties submitted memoranda on the motion which the court took under submission but never decided. The court set the case for trial on December 13, 2013. On that date, the parties entered a memorandum of understanding (MOU) which addressed maintenance among other issues. The parties and their attorneys signed the MOU and the parties then testified that they agreed to its terms. The court gave the parties until January 15, 2014, to submit settlement documents formalizing the agreement. The parties failed to do so and neither party moved to enforce the agreement.

On March 24, 2014, with both parties' counsel present, the court, *sua sponte*, filed a motion to enforce the settlement agreement. Neither Godara nor Singh were present. That same

2

day, the court granted its own motion to enforce and issued its judgment dissolving the marriage. The judgment incorporated a draft marital settlement and separation agreement (DMSSA)[1] that neither party had signed. Neither party appealed.

Pursuant to the terms of the judgment and the DMSSA, Godara owed Singh $600 per month for non-modifiable decretal maintenance until February 1, 2017. If at any time after that date Godara's *gross* annual income reached between $200,000 and $250,000, he would owe Singh 25% of his *net* income. And if his gross income exceeded $250,000, his maintenance obligation would be 30% of his net income. The DMSSA also stated that the sums were not modifiable but would terminate upon the death of either party, if Singh remarries, or if Singh earns a gross annual income of $75,000 or more.

On November 4, 2019, over five years after the judgment became final, Godara brought this motion under Rule 74.06(b) seeking relief from the judgment on the grounds that the DMSSA was void on due process grounds since Godara had not signed the agreement and that the judgment was no longer equitable. Singh, for her part, asked the court to determine the amount of maintenance Godara owed and to determine the correct calculation method for spousal maintenance under the DMSSA.

At the trial on August 17, 2021, Godara testified that although the parties had reached a settlement and "spread on the record . . . the terms of the settlement," they had not reached a final agreement or meeting of the minds as illustrated by their subsequent negotiations and their failure to submit the formal settlement documents within thirty days as directed by the court. Godara testified to certain differences between the December 13, 2013, settlement terms and the

---

[1] While this was a draft document at the time it was before the trial court on March 24, 2014, it became a part of the judgment the court entered that day.

3

provisions of the 2014 judgment with regard to maintenance, an indemnification provision, a release-of-claims provision, and after-discovered property.

Both parties testified that *after* their December 13 settlement, they discussed the meaning of net income. Godara claimed in his testimony that since neither the December 13 terms nor the 2014 judgment defined net income, the parties failed to reach a meeting of the minds on how Godara's maintenance obligation was to be calculated.

On February 11, 2022, the court denied Godara's motion concluding that the 2014 judgment properly incorporated the terms of the parties' December 13 settlement agreement because (1) the parties testified to them, (2) the parties agreed to them in writing in the MOU, (3) Godara's counsel was present when the court moved to enforce the settlement agreement and then entered its dissolution judgment on that basis, and (4) Godara benefitted from the judgment and complied with it for five years before bringing his Rule 74.06 motion. Moreover, the court denied Godara's claim that the judgment was no longer equitable based on its conclusion from *Ulmanis v. Ulmanis*, 23 S.W.3d 814, 818 (Mo. App. S.D. 2000), that it lacked the authority under Rule 74.06 to set aside only a *portion* of the judgment. Finally, as to Singh's motion to determine the maintenance sums due and owning, the court determined that Godara owed Singh $51,237.24 from 2019 and 2020 and entered judgment for that sum.

## Standard of Review

"We review the denial of a motion brought pursuant to Rule 74.06(b) to determine if the trial court abused its discretion." *Kissee v. E-Z Pawn, LLC*, 290 S.W.3d 748, 750 (Mo. App. S.D. 2009) (citing *Lambert v. Holbert*, 172 S.W.3d 894, 895 (Mo. App. S.D. 2005)). Circuit courts have broad discretion when deciding whether to grant a motion to set aside a final judgment. *Estep v. Atkinson*, 886 S.W.2d 668, 675 (Mo. App. S.D. 1994). A court abuses its

4

discretion when its judgment or order is against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration. *Id.* However, whether a judgment is void is a question of law that we review *de novo*. *New LLC v. Bauer*, 586 S.W.3d 889, 895 (Mo. App. W.D. 2019) (citing *Morris v. Wallach*, 440 S.W.3d 571, 575 (Mo. App. E.D. 2014)). A motion for relief from judgment is not intended as an alternative to a timely appeal. *Hurst v. State*, 352 S.W.3d 407, 409 (Mo. App. E.D. 2011).

## Discussion

### I

In his first point on appeal, Godara asserts that the trial court erred in refusing to set aside the spousal maintenance portion of the dissolution judgment because the judgment violated his due process rights and was therefore void. Godara's due process assertion is that he was not present when the court *sua sponte* moved to enforce the parties' settlement and then granted its own motion and, further, that he did not sign the DMSSA the court incorporated into its judgment.

Rule 74.06 allows a party to seek relief from a judgment or order for clerical mistakes, excusable neglect, fraud, irregular judgments, void judgments, and satisfied judgments. A judgment is void under Rule 74.06(b)(4) if the circuit court that rendered it entered the judgment in a manner that violated due process. *Goins v. Goins*, 406 S.W.3d 886, 891–92 (Mo. banc 2013).

"The fundamental requisite of due process of law is the opportunity to be heard." *Kerth v. Polestar Entm't*, 325 S.W.3d 373, 378–79 (Mo. App. E.D. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Our Missouri courts have likewise held that '[c]onstitutional due process requires that for a judgment entered against a party not in

5

default to be valid, there must have been notice of the trial setting and an opportunity to be heard must have been granted at a meaningful time and in a meaningful manner.'" *Kerth*, 325 S.W.3d at 379 (Mo. App. E.D. 2010) (quoting *Breckenridge Material Co. v. Enloe*, 194 S.W.3d 915, 921 (Mo. App. E.D. 2006)).

We find that the trial court did not violate Godara's due process rights because on this record it is apparent that Godara had a meaningful opportunity to be heard. Both Godara and Singh were present for trial on December 13, 2013. That day, after reaching an agreement on the issues in dispute, both signed the MOU and then testified under oath that they agreed to its terms, the material terms of which the court incorporated into its 2014 judgment. Moreover, Godara's counsel, who was present when the court granted its own motion to enforce the settlement and entered the judgment, did not object. In short, Godara had a meaningful opportunity to be heard including through his counsel. *Lewis v. City of University City,* 145 S.W.3d 25, 31 (Mo. App. E.D. 2004).

Moreover, Godara is estopped from challenging the 2014 judgment in light of the foregoing circumstances surrounding the entry of the judgment and because Godara benefitted from the judgment and performed his obligations under the judgment for five years:

> It has often been said that a void judgment is no judgment; that it may be attacked
> directly or collaterally. . . . It neither binds nor bars anyone. . . . [Y]et,
> notwithstanding, a party to such judgment may voluntarily perform it, by paying
> the amount adjudged against him and, when paid, no inquiry will be made as to
> the validity of the judgment; or he may perform the acts required by a void
> decree, or accept its benefits, and thereby estop himself from questioning the
> decree. In other words, a party to a void judgment or decree may be estopped
> from attacking it, either directly or indirectly.

*State ex rel. York v. Daugherty*, 969 S.W.2d 223, 225 (Mo. banc 1998) (citing *Tremayne v. City of St. Louis*, 6 S.W.2d 935, 936 (Mo. 1928) (quoting *Mohler v. Shank*, 61 N.W. 981, 984 (Iowa 1895)). These timeless principles fit snugly here.

Again, a motion for relief from judgment is not intended as an alternative to a timely appeal. *Hurst*, 352 S.W.3d at 409. Had Godara timely appealed back in 2014, his attack on the judgment would have been compelling in light of the sloppy circumstances surrounding its entry—a judgment entered by the trial court on the same day the court filed its own motion *sua sponte* to enforce a written settlement agreement that neither party signed nor were present for, though both parties' counsel were present. But Godara was content to reap the benefits of that judgment which freed him from a mortgage obligation, relieved him from the postnuptial agreement's harsher maintenance terms, granted him equity in certain marital real property, and for over five years imposed on him a relatively modest maintenance obligation. When the maintenance provisions increased, however, due to his rising income, Godara brought this motion. Under these circumstances, we conclude that Godara is estopped from bringing this challenge to the 2014 judgment.

## II & III

As for Godara's claim under Rule 74.06(b)(5) that the spousal maintenance portion of the judgment is no longer equitable, we affirm the judgment because Godara's five-year delay fails to satisfy the reasonable time requirement of Rule 74.06(c), which applies to this portion of his motion. *Kalish v. Kalish*, 663 S.W.3d 484, 487–88. (Mo. App. E.D. 2023). Although the rule does not specify what "reasonable time" means in this context, the Missouri Supreme Court held a two-year delay to be unreasonable. *C.J.G. v. Missouri Dept. of Soc. Servs.*, 219 S.W.3d 244, 249 (Mo. banc 2007).

In *Kissee v. E-Z Pawn, LLC*, 290 S.W.3d at 750, the appellants delayed filing their Rule 74.06(b)(5) motion for twenty-eight months and provided no explanation for their delay. *Id.* The Court found no abuse of discretion in denying the motion because it was not brought within

7

a reasonable time. *Id.* Similarly, here, Godara waited five years to bring his motion and had been complying with the judgment without issue. Thus, the court did not abuse its discretion in denying Godara's motion on this ground.

Our ruling as to Point II also disposes of Point III in which Godara claims the court erred by relying on the holding from *Ulmanis v. Ulmanis*, 23 S.W.3d at 818, that the court could not under Rule 74.06 set aside just a *portion* of the 2014 judgment but had to either set it aside in its entirety or set aside none of it. Godara claims that this rationale is faulty in light of our Supreme Court's decision in *Olofson v. Olofson*, 625 S.W.3d 419, 445 n.9 (Mo. banc 2021), which reversed that holding in *Ulmanis.* Inasmuch as we have already rejected Godara's claim in Point II, we need not reach this argument.

IV

Godara's final point claims that the trial court's calculation of his net income, which was used here to determine the amount of maintenance Godara owed Singh, was erroneous. Godara argues that since net income is undefined in the settlement agreement and since the parties' post-judgment communications demonstrated disagreement as to its meaning, the court erred in imposing its own definition of the term. We disagree.

We review this point under our standards from *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), which provide that we will affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 393 (Mo. banc 2001).

In accordance with these standards, our review of the caselaw demonstrates that trial courts have considerable leeway in determining the meaning of financial terms, e.g. "income,"

8

when deciphering a decree's maintenance provision. *See Bryson v. Bryson*, 624 S.W.2d 92, 97 (Mo. App. E.D. 1981); *Payne v. Payne*, 635 S.W.2d 18, 22 (Mo. banc 1982); *Keller v. Keller*, 877 S.W.2d 192, 194–96 (Mo. App. E.D. 1994).

Moreover, we find the Missouri Supreme Court's opinion in *Lueckenotte* highly instructive and persuasive to our analysis and conclude that the record supports the trial court's determination of the amount of maintenance Godara owed based on its calculation of his net income. Like Godara here, the husband in *Lueckenotte* argued that the agreement was facially uncertain because it was based on a complicated formula, and neither the agreement nor the dissolution decree defined certain key financial terms. 34 S.W.3d at 393. See also *Allard v. Allard*, 856 S.W.2d 64, 69 (Mo. App. W.D. 1993). Nevertheless, in enforcing the decree's terms regarding the husband's maintenance calculation and amounts due, the *Lueckenotte* Court observed that the "[d]etermination that an agreement is sufficiently definite is favored in the courts, so as to carry out the reasonable intention of the parties if it can be ascertained." *Lueckenotte*, 34 S.W.3d at 393 (quoting *Maupin v. Hallmark Cards, Inc.*, 894 S.W.2d 688, 695 (Mo. App. W.D. 1995). Thus, although the decree did not define terms such as "monthly income" or "taxes," the Court found that the terms were not ambiguous and did not involve a complicated formula to ascertain the amount, and therefore the trial court had discretion to ascertain the husband's income from tax returns or paystubs and then determine the amounts due from its interpretation of the agreement. *Id.*

Godara argues the maintenance provision here lacked certainty. We again disagree. This Court in *Bryson* enforced a separation decree that provided "husband would pay maintenance of $350 per month to wife for her support, or a sum equal to 33% of husband's gross income from wages." 624 S.W.2d at 93–94. Likewise, we find the maintenance provision here to be

9

sufficiently certain and enforceable because it provides that Godara owed Singh "$600 per month until 2017, and starting in February of 2017, 25% of his net income if his gross income was between $200,000 and $250,000, and 30% of his net income if his gross income was greater than $250,000."

Based on the foregoing authorities, the record supports the trial court's calculation of net income as it properly sought to decipher the maintenance provision "so as to carry out the reasonable intention of the parties if it can be ascertained." *Lueckenotte*, 34 S.W.3d at 393. The court properly disallowed deductions for certain of Godara's retirement savings accounts (his 403(b), 457(b), and irrevocable 403(b) plans), a college savings plan, disability insurance premiums, and spousal life insurance withholdings. Yet, the court allowed Godara to deduct his health insurance expenses, parking expenses, his health savings account pre-tax contributions, and certain other retirement savings accounts (401(a) - defined contribution and 2012(c) - state retirement account), the propriety of which we are dubious. See *Lueckenotte*, 34 S.W.3d at 394–95. Nevertheless, since Singh did not raise on appeal any issue regarding these deductions, we need not address them. Therefore, we conclude the trial court's determination that Godara owed Singh an additional $51,237.24 in maintenance was supported by the record. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Conclusion

For the reasons set forth above, we affirm the circuit court's judgment.

James M. Dowd, Judge

Kelly C. Broniec, C.J., and
Philip M. Hess, J. concur.

10